THE AUDITOR
*vs.*
GREEN ADAMS.
———
person having
the control of
the slave.

———

MANDAMUS.                  The Auditor *vs.* Green Adams.

Case 3.                  ERROR TO THE FRANKLIN CIRCUIT.

June 10.          Judge MARSHALL delivered the opinion of the court.

1. Though the twenty-eighth section of the fourth article of the constitution may authorize the election of a temporary judge in all cases where the circuit judge is absent or cannot properly adjudicate, yet that section has no reference to the mode of paying such temporary judge. The compensation arises out of the provisions of the twenty-fifth section of the fourth article, and the thirteenth section of the eighth article.

2. The twenty-fifth section of the fourth article only authorizes a deduction from the salary of a judge in cases of *neglect* of duty in

his official capacity. The thirteenth section of the fourth article gives no authority beyond this.

3. No deduction can rightfully be made from the salary of a circuit judge except for neglect of official duty; and the act of 1851, so far as it authorizes any such deduction by its terms, is unconstitutional and void.

4. The circuit judge received his commission as such on the fourteenth of the month, and the first court which it was his duty to hold was 150 miles off, and was fixed by law for the third Monday of the same month, which was the sixteenth. Held that he was guilty of no neglect of official duty for not being present on the first and second days of the term.

THE AUDITOR
vs.
GREEN ADAMS.

In this case the circuit court for the county of Franklin awarded a peremptory mandamus against the auditor of public accounts, requiring him to issue his warrant in favor of Green Adams, a circuit judge of this commonwealth, for the sum of $14 58, which the auditor had deducted from his salary, and withheld from him under the following circumstances :

Case stated.

Adams having been elected judge of the twelfth judicial circuit, at the May election in the year 1851, received his commission at his residence in Barbourville, (within the twelfth circuit,) on the 14th day of June, 1851, by due course of mail from the seat of government, and on the same day took the oath of office. From that day therefore, according to usage and by the express provision of the act of 24th March, 1851, (*Sess. Acts*, 393,) his salary commenced, which, by the act referred to, was $1400 a year, payable quarterly. An act of March 22, 1851, had fixed the terms of the circuit court for the county of Johnson, (which was within the twelfth district,) to commence on the third Monday in June and November. In 1851 the third Monday in June was the sixteenth day of the month, and it is agreed as a fact, that the seat of justice of Johnson county was one hundred and fifty miles from Barbourville, and that in consequence of the distance it was impossible for the judge to have reached the place of holding the court, during the first or second day of the June term.

An act of March 3, 1851, provides that if the circuit judge be absent, &c., or, if being present, he cannot properly hold the court, a judge, *pro tem.*, shall

be elected, (by the practicing attorneys in said court,) who shall receive as a compensation for his services, a sum bearing the same proportion to the circuit judge's salary as the time he may serve shall bear to the length of the judicial term in said circuit.   The clerk is directed to enter the proceeding of record, and to certify to the auditor the time said judge, *pro tem.*, was engaged in the business of the court, and the auditor is directed to issue a warrant on the treasury for the amount which may be due said judge, *pro tem.*, and to deduct it from the salary of the circuit judge. Under the provisions of this act, a judge, *pro tem.*, was chosen on the first day of the Johnson circuit, who held the court on that and the next day, and received therefor $14 58, which the auditor deducted and withheld from the salary of Adams.

The mandamus was awarded on the ground that the act providing for compensating the judge, *pro tem.*, at the expense of the circuit judge, is unconstitutional, so far as it applies to cases in which the necessity of electing a judge, *pro tem.*, to supply the place of the regular judge arises from any other cause than a neglect of official duty by the regular judge; and that as the absence of judge Adams from the Johnson circuit court during the two first days of its June term, arose not from any act or fault or peculiar infirmity of his, but from the late period at which he received his commission, and the impossibility of afterwards reaching the court in time, it cannot be regarded in any just sense as a neglect of official duty on his part, and therefore furnished no ground for making a deduction from his salary.   If, as assumed in this view, the constitution allows no deduction from the salary of a circuit judge, except for neglect of his official duty, we think the conclusion that the deduction is not authorized in the case before us is entirely obvious.   For not only may the judge have been using the greatest possible diligence in getting to the court, which was the first act of duty to be performed, but it may be inferred that he did, in fact, get

there and preside in the court as soon as the journey could be performed. And if he may be subjected to a deduction from his salary while he was actually discharging, with the utmost diligence and at the earliest moment, the duty of going to the court which he was required to hold, he might just as well be deprived of his salary while he is actually holding one of his courts, as required by law, because he could not, at the same time, be holding another court of his circuit at the distance of fifty or one hundred miles, which may have been inadvertantly made to interfere, or because, being detained at one court until Saturday night, he could not reach the next court in the circuit by the succeeding Monday appointed for its commencement.

The statute, based apparently upon the principle that whenever it is proper to elect a temporary judge, it is proper to deduct his compensation from the salary of the regular judge, provides for the deduction in all cases in which the regular judge is either absent, or, if present, cannot properly preside. The election of the temporary judge, whenever the circuit judge is absent from whatever cause, or when being present cannot properly preside, may be authorized by the twenty-eighth section of the fourth article of the constitution. But that section has no reference whatever to the mode of compensating the temporary judge, and gives no authority for paying him from the salary of the other. The question as to the right of making the deduction from the salary arises under the twenty-fifth section of the fourth article, and the thirteenth section of the eighth article of the constitution.

The twenty-fifth section of the fourth article prescribes, that "the judges of the circuit court shall, at stated times, receive an adequate compensation to be fixed by law, which shall be equal and uniform throughout the state, and which shall not be diminished during the time for which they were elected." The other section above referred to, declares that "it

---

THE AUDITOR
*vs.*
GREEN ADAMS.

1. Though the 28th section of the 4th article of the constitution may authorize the election of a temporary judge in all cases when the circuit judge is absent or cannot properly adjudicate, yet that section has no reference to the mode of paying such temporary judge. The compensation arises out of the provisions of the 25th section of the 4th article, and the 13th section of the 8th article.

2. The 25th section of the 5th article only authorizes a deduction from the salary of a judge in cases of *neglect* of duty in his official capacity. The 13th sec-

tion of the 4th
article gives no
authority be-
yond this.

3. No deduc-
tion can right-
fully be made
from the sala-
ry of a circuit
judge except for
neglect of offi-
cial duty; and
the act of 1851,
so for as it au-
thorizes any
such deduction
by its terms, is
unconstitution-
al and void.

shall be the duty of the general assembly to regulate by law in what cases, and what deductions from the salaries of public officers, shall be made for neglect of duty in their official capacity."

This latter section makes no reference to the supplying of a temporary officer, nor to his compensation. And although it authorizes a deduction from the salary of a judge to such extent as the legislature may prescribe, it is only for neglect of duty in his official capacity. Beyond this no authority is derived from the thirteenth section of the fourth article, unless it be to define for what neglect of official duty and to what extent, in each case, the deduction shall be made. But this power of defining the cases of neglect of official duty in which a deduction of salary shall be made, does not include the power to direct the deduction when there is no neglect of official duty and no pretext for charging such neglect. And although the statute authorizes the election of a judge *pro tem.*, whenever the circuit judge fails to attend, and directs the deduction whenever the temporary judge is elected and serves, and requires pay, yet it does not attempt to define what shall be deemed a neglect of official duty, nor to make the deduction on the ground of such neglect. Nor can it be supposed that the legislature considered or intended to decide that every absence of a judge from his court, without regard to the cause or circumstances, or that the absence of a judge, under the circumstances of this case, should be deemed a neglect of duty in his official capacity. We do not, therefore, regard this statute as proving that in the judgment of the legislature every absence of a judge from his court is a neglect of official duty. And even if this statute had so expressly declared, there might have been ground for supposing that an absence necessarily arising from the difficulties and delays attending the universal change of officers in carrying the new constitution into effect, might not have been contemplated or intended by the legislature.

But without attempting any construction of the statute which might exclude the present case, which is clearly embraced by its terms, we are satisfied that it is included not as a case of neglect of official duty, to which the statute obviously has no especial reference, but as a failure in fact to attend on the first days of the court, which rendered the election of a substitute proper, and which the legislature, either from inadvertence or from the idea that it was just or expedient that the officer whose absence, from whatever cause, rendered it necessary to provide a new officer for the purpose of performing his duties, should bear the additional expense, considered, whether attributable to neglect or not, as a sufficient ground for abating his salary.   Of course the legislature entertained the opinion that the provision was within the constitutional power of that department.   But as it is not authorized by the thirteenth section of the eighth article, except so far as it embraces cases of neglect of official duty, the power, so far as the present case is concerned, must be derived from some other source.

Conceding then that the legislature being authorized to provide for the election of a temporary judge, whenever the regular judge should, from any cause, be absent, might, unless restricted by the constitution, provide for the payment of the temporary judge by abating, at such rate as it might deem proper, the salary of the regular judge, the question arises, whether such power is restricted by the twenty-fifth section of the fourth article, or whether the statute before us, as an exercise of the power, is inconsistent with that section.

By that section the circuit judges shall, at stated times, receive an adequate compensation to be fixed by law.   But whatever power the legislature might otherwise have, is restricted by the provision that this compensation shall be equal and uniform through the state, and shall not be diminished during the time for which they (the judges) are elected.   Whether

this clause of the constitution might or not be satisfied by giving a specific sum to each judge for every day he should be employed in official business, or for every day he should hold a court, we need not inquire. There certainly would be great difficulty in producing equality and uniformity of compensation in that mode. It is sufficient, however, that it is not attempted in the statute of 1851, fixing the salaries of the judges, which, like all previous statutes providing compensation for the circuit judges of this commonwealth, provides an annual salary or fixed sum payable in quarterly installments. And it is to be observed that the thirteenth section of the eighth article of the constitution, dropping the word compensation used in the twenty-fifth section of the fourth article, uses the word salary, which, as applicable to judges at least, would seem, by usage and precedent, to refer not to a *per diem* compensation for actual service or labor, but to a compensation which runs on and becomes due for periods within which there may be no actual official service. A fixed sum being payable periodically, while the judge continues in office, the rate of compensation is measured not by the number of days on which he is required to do or actually does official labor or business between the periods of payment, but by the number of days during which he holds his office between those periods. This mode of compensating the judges of the highest court of original jurisdiction, who are to a great extent withdrawn from ordinary pursuits either of profit or pleasure, and whose time and talents, not only while in court but while they hold their office, should and for the most part must be devoted to the studies and duties pertaining to their station, is entirely reasonable and just, is established by precedent and usage as the appropriate mode, and if not required is at least sanctioned by the constitution, and has certainly been adopted by the legislature in carrying out the requisition of the twenty-fifth section of the fourth article,

We greatly doubt whether the compensation of the judges could be made equal and uniform in any other mode than that of a fixed and equal salary to each, and of which each would be entitled to the same portion for every year, or for every month, or for every day that he should hold the office. The section does not say "the compensation shall, as nearly as possible, be equal and uniform," but requires that it shall be equal and uniform. It exacts precise equality and uniformity in the compensation. And this cannot be attained with reference to any other criterion or common measure, except with regard to sums and mere lapse of time and continuance in office. With respect to the services required or expected of a judge, and for which compensation is to be made, there is no mode of measuring either their quantum or their value with precision. The number of juridical days in his courts, forms no just criterion. For the extent and value of the service will vary on different days in the same court, as the matters to be considered may vary in magnitude and complicacy, and similar variations will occur in the services rendered in different courts in the same number of days. In addition to which, much or all of a vacation may be necessarily taken up in the investigation of questions to be decided in the ensuing term. And other judicial duties may devolve upon the judges, to be performed by different judges in different degrees in vacation. We repeat, therefore, that equality and uniformity of compensation, with reference to the actual services of the judges, is unattainable; and that it is not required by the constitution, is evident from a comparison of the twenty-fifth section of the fourth article, requiring equality and uniformity in the compensation of the judges, with the the nineteenth section of the same article, which, in directing the legislature to divide the state into twelve judicial districts, does not require that they shall be equal in judicial business, which would have been a vain requisition, but requires only that due regard be had "to business,

THE AUDITOR
*vs.*
GREEN ADAMS.

population, and territory; provided, that no county shall be divided." Equality in the districts was known to be impracticable, and was therefore not required nor contemplated. But equality and uniformity in the compensation of the judges by means of fixed salaries, payable at stated times, was practicable, was contemplated, and is in effect required. And as the salaries of the judges are to be equal and uniform, their districts are to be made with due regard to business, territory and population, without dividing any county—that is, they are to be made as nearly equal, as may conveniently be, under these conditions. The services of the judges depend mainly on the size and business of their districts, as to which there could only be an approximation to equality. Their compensation is to be equal and uniform. This requisition can only be complied with by paying them equal sums for equal periods of their continuance in office. And this we consider to be the true meaning and effect of the clause under consideration.

If then there were no other constitutional provision on the subject, could the legislature direct a deduction from, that is a diminution of the sum payable to the judge for salary for any cause whatsoever occurring during his continuance in office, unless by way of penalty for some act or omission previously defined, and the existence of which should be ascertained in the established modes of trial? We are of opinion that it could not, because such deduction or diminution being of course applicable to some judges only or to all in different degrees, would destroy the equality and uniformity of compensation which the twenty-fifth section peremptorily and unconditionally requires, and to which the legislature could make no exception.

The deduction authorized by the thirteenth section of the eighth article is obviously a penalty for neglect of official duty. The deduction directed by the act of 1851, is as certainly a penalty imposed for every absence of a judge followed by an election of a tem-

4. The circuit judge received his commission as such on the fourteenth of the month, and

porary judge. It is not in this cause authorized by the thirteenth section of the eighth article as already shown, because there is no pretense of a neglect of official duty. And if the legislature might denounce a penalty against a judge for neglect of duty, or even for absence, whether by neglect or not, it could not adjudge the penalty and order execution, either by prior or subsequent act, except as it is authorized to pass such act by the thirteenth section of the eighth article. Although, therefore, we are not satisfied that this statute, having been passed before the judges were elected, comes literally within the interdict of the twenty-fifth section, that their compensation shall not be diminished during the time for which they are elected, we are satisfied that it is inconsistent with the tenor and spirit of the entire section, and that except so far as it is authorized by the thirteenth section, which applies only to cases of neglect of official duty, it is unconstitutional and void.

Wherefore, the judgment awarding a peremptory mandamus is affirmed.

*Harlan*, Attorney General, for Auditor.

the first court which it was his duty to hold was 150 miles off, and was fixed by law for the third Monday of the same month, which was the 16th. Held that he was guilty of no neglect of official duty for not being present on the first and second days of the term.