**BLUE CROSS & BLUE SHIELD OF KENTUCKY, INC., Appellant,**

v.

**Helen BAXTER, Appellee.**

Court of Appeals of Kentucky.

April 11, 1986.

Rehearing Denied June 6, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Aug. 26, 1986.

Lea Pauley Goff, Joseph M. Day, E. Paul Herrington III, Louisville, for appellant.

John M. Coy, Richmond, for appellee.

Before GUDGEL, MILLER and WIL-HOIT, JJ.

MILLER, Judge.

Appellee, Helen Baxter, was severely injured in a one-car automobile accident on March 4, 1984. As a result, she incurred medical expenses and work loss (lost wages), each exceeding $10,000.00.[1]

At the time of the accident, Helen had a no-fault insurance policy as mandated by KRS Chapter 304.39. Her policy, issued by American Fire & Casualty Company (American Fire), provided for "basic reparation benefits" (BRB) covering net economic loss which included her work loss and medical expenses up to $10,000.00. KRS 304.39–020(2), (5), and KRS 304.39–030. In addition to her no-fault coverage, Helen (a state employee) was covered under a certain group health policy issued by appellant, Blue Cross & Blue Shield of Kentucky (Blue Cross), providing for payment of medical expenses.

After the accident, American Fire recognized its obligation by paying the sum of $10,000.00 to Helen for work loss and medical expenses. Actually, Helen received $800.00 for lost wages and $51.93 for eyeglasses. Further, American Fire, pursuant to KRS 304.39–240, paid the balance of $9,148.07 directly to Jewish Hospital on her hospital account. Blue Cross refused to duplicate the medical expenses and Helen sued.

Blue Cross maintains that the "coordination of benefits" provision in its policy renders the no-fault carrier the primary obligor; thus, it does not have to duplicate medical payments. Helen argues enforcement of the coordination of benefits provision would essentially deny her the recovery for lost wages to which she is entitled under the no-fault act. Coordination of benefits clauses are designed to establish responsibility for payment between carriers where overlapping "health plans" exceed 100% of the covered services—in this case, medical expenses. It appears that the underlying purpose of coordination clauses is to prevent overlapping of insurance coverage thereby reducing premiums. We are directed to one state which mandates that health plans be coordinated with no-fault benefits. *See Nyquist v. Aetna Ins. Co.,* 84 Mich.App. 589, 269 N.W.2d 687 (1978). We are directed to no such provision in our no-fault act.

The circuit court disagreed with Blue Cross's contention. Judgment was entered in favor of Helen, and Blue Cross brings this appeal. We affirm.

■ Blue Cross offers several arguments largely pertaining to the propriety of summary judgment. CR 56. These arguments are without merit as summary judgment does not require that there be no issue of fact but that there be no genuine issue of fact. If the defenses have no substance, if controlling facts are not in dispute, or if factual disputes are insignificant, summary judgment is appropriate. *See Bennett v. Southern Bell Telephone and Telegraph Co.,* Ky., 407 S.W.2d 403

---

1. Through April 13, 1984, Helen incurred medical expenses amounting to $48,110.50. As she remains disabled, her work loss greatly exceeds $10,000.00. KRS 304.39–130.

(1966). Here, summary judgment was the appropriate method of disposition. As we view the matter, the only significant question is one of law in determining the application of the coordination clause to the facts at hand.

■ If economic loss (exclusive of medical expenses) exceeds the maximum BRB to which a claimant is entitled, coordination is impermissible. In this case, Helen's economic loss in wages alone exceeds the $10,000.00 maximum to which she is entitled. If we were to permit Blue Cross to coordinate its responsibility for medical bills with the payments which Helen has received from the no-fault carrier, it would effectively depreciate her recovery under the no-fault act. This we cannot sanction. It would vitiate the public policy set forth in the Motor Vehicle Reparations Act. KRS 304.39–010.

Our public policy is manifested in the acts of the legislature. In *Kentucky State Fair Board v. Fowler*, 310 Ky. 607, 221 S.W.2d 435, 439, it was stated as follows:
.... The public policy of a state is to be found: first, in the Constitution; second, in the Acts of the Legislature; and third, in its Judicial Decisions. [Citations omitted.] Where the Constitution is silent, the public policy of the State is to be determined by the Legislature on subjects which it has seen fit to speak. [Citations omitted.] It is only where the Constitution and the Statutes are silent on the subject that the Courts have an independent right to declare the public policy. [Citations omitted.]

■ It is clear to us that in enacting no-fault legislation, the intent was to provide a remedy to automobile accident victims that could not be impinged upon by any means whatsoever. This was the victim's reward for sacrificing traditional tort rights. *See Fann v. McGuffey*, Ky., 534 S.W.2d 770 (1975); KRS 304.39–060(2); KRS 304.39–030(1). No-fault is a specie of compulsory insurance. 7 Am.Jur.2d *Automobile Insurance* §§ 20 and 341 (1980). It is remedial in nature and thus will be broadly construed to carry out its benefi-

cial purpose of providing compensation for persons injured by automobiles. 7 Am. Jur.2d *Automobile Insurance* § 28 (1980). Although our statute provides that an injured party may not collect from more than one "reparation obligor" (KRS 304.39–050[3]), there is every indication the legislature intended that his one-time recovery not be diminished. The statute defines reparation obligor as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits under the statute." KRS 304.39–020(13). The statute does not include insurers, such as Blue Cross, who are not providing insurance under the no-fault statute. Further, BRB are qualifiedly exempt from execution (KRS 304.39–260[1]), and are not subject to deductions or set-off. KRS 304.39–250. Apparently the only authorized deductions in BRB are those arising from social security or workers' compensation. KRS 304.39–120.

In view of the foregoing, we believe it offensive to the public policy manifested in the act to permit Blue Cross to coordinate under the circumstances. Blue Cross has a right to contract, but the right is not unlimited. 17 Am.Jur.2d *Contracts* § 174 (1964).

For the foregoing reasons, the judgment of the Madison Circuit Court is affirmed.

Further, pursuant to 2(a) of the Order Designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.