Curtis A. SAXE and Virginia
L. Saxe, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellees.

No. 95–CA–0329–MR.

Court of Appeals of Kentucky.

Nov. 7, 1997.

Michael Connelly, Louisville, for Appellants.

Kenneth E. Dunn, Louisville, for Appellees.

Before WILHOIT, C.J., and ABRAMSON and BUCKINGHAM, JJ.

## OPINION

ABRAMSON, Judge.

The primary issue in this appeal is whether the trial judge erred in excluding from an award of damages in a motor vehicle accident case items which were paid or payable under the added reparations coverage in the insurance policy purchased by Appellants Curtis and Virginia Saxe. Citing as dispositive the holding in *United Services Automobile Association v. State Farm Mutual Automobile Insurance Company*, Ky.App., 784 S.W.2d 786 (1990), the trial judge concluded that added reparation benefits are to be treated in the same manner as basic reparation benefits and thus all items covered by reparation benefits must be excluded from the judgment on the jury verdict. We agree and affirm as to that primary issue.

Appellant Curtis Saxe ("Saxe") was injured in an automobile accident on January 25, 1993 when the vehicle he was operating collided with an automobile driven by William R. Wright ("Wright"). At the time of the accident, Saxe was insured by State Farm Mutual Automobile Insurance Company ("State Farm") from which he had purchased coverage for $10,000 in basic reparation benefits and $20,000 in added reparation benefits, along with $25,000 in underinsured motorist coverage. Wright was insured by Allstate Insurance Company ("Allstate") with a liability coverage limit of $25,000.

In August, 1993, Saxe filed a complaint against Wright to recover damages for bodily injuries sustained in the accident. Counsel for Saxe sent a written subrogation notice to State Farm pursuant to KRS 411.188. Saxe thereafter filed an amended complaint joining State Farm as a defendant in order to assert a claim for the underinsured motorist protection provided in his policy of insurance. State Farm filed an answer to the amended complaint but did not participate at the trial. Counsel for Wright stipulated liability in his opening argument and the case was tried solely on the issue of damages. The jury returned a verdict totalling $50,300.92 after which Saxe tendered a judgment in the amount of $40,300.92, reflecting a deduction of $10,000 for basic reparation benefits (sometimes referred to as "BRB's") which had been paid to Saxe. State Farm and Wright each objected to the tendered judgment asserting that in addition to the $10,000 set-off for BRB's there should be a set-off for all paid or payable added reparation benefits (sometimes referred to as "ARB's"). The trial judge, agreeing with State Farm's contention that under *United Services Automobile Association, supra,* added reparation benefits must be treated in the same manner as basic reparation benefits to the extent that they are paid or payable by the personal injury protection ("PIP") carrier, entered a judgment which reduced the award by the sum of $17,200.92. Saxe was awarded judgment totalling $31,000, allocated in the amount of $6,000 against State Farm on his underinsurance claim and $25,000 against Wright representing the limits of his liability coverage. In response to Saxe's motion to alter or amend the judgment, the trial judge corrected a computational error and concluded he erred in omitting $2,000 in future medical expenses as part of the reparation benefits paid or payable. He also refused to deviate from his previous ruling on the added reparation benefits set-off and entered a final judgment in the amount of $31,100.

In this forum, Saxe advances several arguments in support of his contention that the exclusion of added reparation benefits is improper. In his primary argument, Saxe contends that added reparation benefits are not the same as basic reparation benefits and therefore the abolition of tort liability for BRB's contained in KRS 304.39–060(2)(a) does not extend to ARB's. Alternatively, he posits that State Farm's failure to intervene or assert its claim to subrogation for added reparation benefits pursuant to KRS 411.188 precludes a set-off in excess of the $10,000 in basic reparation benefits. Finally, Saxe urges us to find that added reparation benefits are personal to the insured and may be stacked with his underinsured motorist coverage; that the trial judge erred in deducting

$2000 in future medical expenses from the award; and that the insured may choose whether benefits are to be paid from the ARB coverage or the underinsured motorist coverage. Saxe also contends that he is entitled to attorney fees under KRS 304.39–070(5). While several alternative theories are presented, the crux of this appeal is whether added reparation benefits are to be treated in the same manner as basic reparation benefits. Like the trial judge, we are convinced that this question has been properly answered by the holding in *United Services Automobile Association, supra.*

The Court in that declaration of rights action between two insureds was confronted with the issue of whether under the Motor Vehicle Reparations Act, KRS 304.39–010 *et seq.* ("MVRA") an insurer which has paid BRB's and ARB's to its insured may recover from the insurer of the responsible "secured party" *all* such reparation benefits or only the BRB's. The *United Services* Court concluded that the statutory scheme as a whole evinces a clearly articulated legislative intent to allow reparation obligers to recover the full amount of added as well as basic reparation benefits. As the Court noted, KRS 304.39–070(3), which grants an insured's reparation obligor the right to recover benefits from the obligor of the responsible "secured party," makes no specific reference to the recovery of added reparation benefits. However, the Court found persuasive the language of KRS 304.39–070(4):

> Any entitlement to recovery for *basic or added* reparation benefits paid or to be paid by the subrogee shall in no event exceed the limits of automobile bodily injury liability coverage available to the secured party after priority of entitlement as provided in this section and KRS 304.39–140(3) has been satisfied.

(Emphasis added). The *United Services* Court also relied upon the language of KRS 304.39–140(3) as indicative of the proposition that an obligor may recover added reparation benefits to the same extent as basic benefits:

> If the injured person, or injured persons, is entitled to damages under KRS 304.39–060 from the liability insurer of a second person, a self-insurer or an obligated gov-

ernment, collection of such damages shall have priority over the rights of the subrogee for its reimbursement of *basic or added* reparation benefits paid to or on behalf of such injured person or persons.

(Emphasis added). In addition, the Court cited KRS 304.39–290(1), the statute creating an arbitration association "to provide a mechanism for the reimbursement, among reparation obligers of losses paid as basic or added reparation benefits. . . ." With respect to this particular statute, the Court noted it would be "absurd if the legislature set up a means of recovering added [reparation] benefits when there was no right to do so." 784 S.W.2d at 788. Having considered all relevant provisions of the MVRA, the *United Services* Court concluded that the reparations obligor was entitled to reimbursement for both BRB's and ARB's.

This case presents the closely related issue of whether the MVRA statutory scheme must be construed as abolishing tort liability to the extent that added reparation benefits as well as basic reparation benefits are paid or payable. As in *United Services,* the starting point in our analysis is a portion of the statute which speaks only to basic reparation benefits. KRS 304.39–060(2)(a) provides:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under paragraph (b) of this subsection.

Saxe urges us to confine our analysis to this provision. We decline to do so because, as stated in *United Services,* "the [MVRA] statute is to be read in its entirety." 784 S.W.2d at 787.

KRS 304.39–140, the statute authorizing added reparation benefits, specifically provides that "[t]he added reparation obligor

shall be subrogated, subject to KRS 304.39–070 and 304.39–300, to the injured person's right of recovery against any responsible third party." State Farm argues that by virtue of this subrogation provision, the damages recovered or recoverable as ARB's are no longer the insured's to claim at trial; the right of recovery resides with the reparation obligor. This view certainly comports with the overall compensation system embodied in the statute.

The entire MVRA statutory scheme reflects a zero-sum approach where the injured person's losses are fully compensated by a combination of reparation benefits, liability insurance and, if necessary, underinsured motorist coverage.[1] The reparation obligor then recovers its payments (BRB's or ARB's) from the insurer for the responsible secured party. Under this system, the injured party is fully compensated or "made whole" (if appropriate coverages are in place) but never realizes a net gain from his injuries. If we focus solely on KRS 304.39–060(2)(a) and conclude tort recovery is still available for those items of damage previously paid as ARB's, this system is skewed. The insurer for the responsible secured party (Allstate in this case) will pay the items once pursuant to the judgment and be asked to do so a second time pursuant to the statutory right of reimbursement accorded the added reparations obligor. This result is inconsistent with the MVRA's zero-sum system and produces a double payment-double recovery scenario not expressly authorized by the statute. Read in its entirety, the MVRA must be construed as abolishing tort liability to the extent the injured party has received or could receive BRB's or ARB's under his or her existing coverage.

■ Having concluded that added reparation benefits should be excluded from the award, we turn to Saxe's contention that State Farm's failure to intervene or assert its subrogation claim forecloses the trial court's ability to deduct the amount of added reparation benefits from the award. Saxe did not dispute a deduction for the $10,000 in basic

reparation benefits despite State Farm's failure to intervene or assert a claim for a set-off as to those benefits because his tendered judgment included a corresponding reduction in the jury verdict. This set-off or deduction after judgment approach comports with Kentucky law regarding an obligor's recovery of basic reparation benefits and is equally applicable to added reparation benefits.

■ Under Kentucky law, a reparation obligor is not required to intervene pursuant to KRS 411.188 in order to preserve its rights. In *Ohio Casualty Insurance Company v. Ruschell,* Ky., 834 S.W.2d 166, 171 (1992), the Kentucky Supreme Court held that KRS 411.188 does not extend to no-fault coverage in the first instance:

> But the essential fact in the payment of no-fault benefits is that it is for elements of damages for which tort liability has been "abolished," *see* discussion of KRS 304.39–070(3). No-fault benefits are payments for items which will *not* be claimed in a tort action. The no-fault carrier with notice of the tort action may intervene and assert a *separate* claim, not against the tortfeasor, but against the tortfeasor's liability insurer, but this is a "piggyback" procedure rather than part of the tort claim.

Justice Leibson concluded the majority opinion by noting that KRS 411.188 applies to collateral source payments and not reparations benefits.

> Thus the subject matter of KRS 411.188 is a statutory change in the way "collateral source payments" are presented to the trier of fact[.] ... It is directed at a type of benefit *different* in kind and character to BRB payments structured by the MVRA. While we do not question the right of the General Assembly to require a person receiving BRB to provide formal notice to the reparations obligor when filing a tort action for damages, and to provide for some type of protection to the reparations obligor (or reasonable penalty) from failure to do so, there is nothing in the context of KRS 411.188 nor the circumstances in which it was enacted to suggest BRB pay-

---

1. Uninsured motorist coverage may also apply pursuant to KRS 304.20–020. The MVRA and uninsured motorist statute are interrelated and

must be read *in pari materia. State Farm Mut. Auto Ins. Co. v. Fletcher,* Ky., 578 S.W.2d 41, 43 (1979).

ments are the type of payments addressed by that statute. The statute expressly limits mandatory notification to persons who "hold subrogation *rights to any award received by the plaintiff as a result of the action.*" ... The no-fault carrier does not meet this description.

834 S.W.2d at 171 (emphasis in original). We see no discernible difference between the no-fault carrier paying BRB's or ARB's; in either capacity the reparations obligor has no obligation to intervene.

Finally, we note that as to BRB's and ARB's, the trial judge utilized the procedure approved in *Drury v. Spalding*, Ky., 812 S.W.2d 713, 716 (1991), for handling the matter of reimbursement without misleading or confusing the jury:

> Two previous appellate decisions, *Thompson v. Piasta*, [Ky.App., 662 S.W.2d 223 (1983)], and *Beckner v. Palmore*, Ky.App., 719 S.W.2d 288 (1986), have instructed trial courts to take care of this matter by giving the plaintiff's reparation obligor "credit" in the judgment. As stated in *Beckner*, "the proper procedure is to reduce the amount of the judgment at the conclusion of the trial to the extent that its award would provide a double recovery."

This set-off after judgment is the proper method for handling both BRB's and ARB's.

■ We turn now to Saxe's argument that he should be allowed to stack his added reparation benefits and underinsured motorist coverage. Several Kentucky cases recognize the right of an insured to stack or aggregate separate items of coverage purchased by the insured. *Hamilton v. Allstate Ins. Co.*, Ky., 789 S.W.2d 751 (1990) (uninsured motorist coverage); *State Farm Mutual Auto Ins. Co. v. Mattox*, Ky., 862 S.W.2d 325 (1993) (added reparation benefits); *Allstate Ins. Co. v. Dicke*, Ky., 862 S.W.2d 327 (1993) (underinsured motorist coverage). Significantly, all of the cases involve the stacking of the same type of coverage, not the combination of different types of insurance as sought by Saxe. Moreover, in each instance stacking is necessary to compensate or make whole the injured party; none of the cases involved stacking to provide an excess or double recovery of any item of loss.

Saxe asks us to consider *Blue Cross & Blue Shield of Ky., Inc. v. Baxter*, Ky.App., 713 S.W.2d 478 (1986). Although not a stacking decision, the *Baxter* Court held that a group health insurer could not refuse to duplicate payment for medical expenses for an insured who had already recovered the maximum basic reparation benefits from her no-fault carrier. In that case, the insured's lost wages greatly exceeded the $10,000 in BRB coverage. If the health insurer could deny coverage of approximately $9,000 in medical bills based on a coordination of benefits clause, the insured would lose a corresponding amount in lost wages recovery. *Baxter* thus allowed the insured to recover the medical expenses from her health insurer and the lost wages from her reparations obligor. The end result maximized her recovery (although she still had insufficient lost wage coverage) but did not result in an excess or double recovery. This absence of any excess recovery is consistent with the previously cited stacking decisions.

Saxe candidly admits that his expectations are premised upon the theory that the purchase of the two forms of coverage should give rise to double recovery. However, such an expectation cannot be reconciled with the statutory purpose of making whole, or fully compensating, an insured. Double recovery is a concept foreign to the principle of full compensation and the policy underpinning our no-fault statutes. Furthermore, the purchase of added reparation benefits and underinsured motorist coverage does not always give rise to overlapping coverage. For example, added reparation benefits might be purchased to provide enhanced personal injury protection in the event of an accident in which the insured is at fault and sustains injuries exceeding the $10,000 limit of basic reparation benefits. Underinsured motorist coverage comes in to play whenever the insured has uncompensated damages that he or she is entitled to recover under a judgment in excess of the policy limits of the owner of the other vehicle.

In short, there is no reasonable expectation of double recovery under our statutory scheme and nothing in prior decisions which would support the stacking of different cov-

erages sought in this case. There was no error in refusing to stack Saxe's added reparation benefits and his underinsured motorist coverage.

 A related question concerns the right of an insured to select the coverage from which benefits are to be paid. As with basic reparation benefits, an insured is entitled to added reparation benefits without waiting until a judgment has been obtained against the tortfeasor. KRS 304.39–210. By contrast, underinsured motorist coverage is generally not available until a judgment in excess of the tortfeasor's policy limits has been obtained. KRS 304.39–320. *See also Coots v. Allstate Insurance Company*, Ky., 853 S.W.2d 895 (1993) (holding underinsured carrier's obligation may also arise where uncovered damages remain after the insured has settled with tortfeasor's liability carrier for policy limits). We find nothing in the statutory scheme which would allow an insured to treat these distinct protections as interchangeable by granting him the option of selecting the coverage from which he desires his benefits to be paid.

Saxe's fifth argument is that the credit of $2000 for future medical expenses cannot be reconciled with the holding in *Wemyss v. Coleman*, Ky., 729 S.W.2d 174 (1987). State Farm concedes that the credit runs afoul of *Wemyss*, but argues that Saxe failed to preserve the error by asking the trial judge to correct it. State Farm also advocates establishing a credit procedure whereby an insured could continue to be compensated for his injuries from any continuing reparation benefits, similar to the way medical expenses are handled in the area of workers' compensation benefits. The fact that State Farm can conceive a better method for handling future medical expenses does not relieve this Court from its obligation to follow the precedent established by our Supreme Court. SCR 1.030(8)(a). Nor do we believe that we should decline to correct the error for lack of preservation where the issue of available credits and set-offs was clearly before the trial judge. We are therefore reversing as to that portion of the judgment and remanding for entry of a judgment delet-ing the $2000 set-off for this element of damage.

Finally, Saxe argues that he is entitled to an award of attorney fees pursuant to KRS 304.39–070(5). As this issue has not been presented to the trial judge for his consideration, we are precluded from addressing it on this appeal. *Massie v. Persson*, Ky.App., 729 S.W.2d 448, 452 (1987) (the "trial court should first be given the opportunity to rule on questions before they are available for appellate review.")

The judgment of the Jefferson Circuit Court is reversed and remanded with directions to delete the set-off for $2000 in future medical expenses. In all other respects, the judgment is affirmed.

All concur.