NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellant,

v.

Timothy G. HATFIELD, Executor
of the Estate of Charles Gay
Hatfield, Appellee.

No. 2001–SC–0969–DG.

Supreme Court of Kentucky.

Dec. 18, 2003.

Gregory L. Smith, Kristie Babbitt Walker, Smith & Hoskins, Louisville, Counsel for Appellant.

Lee E. Sitlinger, Louisville, Counsel for Appellees.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed a summary judgment entered by the circuit court which had dismissed the claim of the Hatfields and upheld the exclusion for underinsured coverage as found in the Nationwide policy of insurance.

This case involves a question of insurance coverage arising from an automobile collision. The key question relates to the validity of excluding government-owned vehicles from underinsured coverage.

Nationwide frames the issues as follows: 1) that the Court of Appeals erred in voiding the plain language of the policy excluding government-owned vehicles; 2) that the Supreme Court has specifically upheld

the exclusion of coverage for damages caused by governmental agencies; 3) that *U.S. Fidelity & Guaranty Co. v. Preston,* Ky., 26 S.W.3d 145 (2000), does not overrule the principles of *Commercial Union Insurance Co. v. Delaney,* Ky., 550 S.W.2d 499 (1977); 4) that the Court of Appeals erred in applying the doctrine of "reasonable expectations" to the contract language; and 5) that long-standing public policy may not be amended without legislative authority.

Hatfield states that the questions presented are as follows: 1) that the policy language "due by law" does not preclude recovery of underinsured motorist coverage benefits under the facts of this case; 2) that the policy language contained in the "recovery" provision of the underinsured motorist endorsement does not preclude recovery in this case; 3) that the underinsured motorist coverage exclusion for government vehicles is void and unenforceable; and 4) that the doctrine of reasonable expectations compels the extension of underinsured motorist coverage benefits under the facts of this case.

### Facts

In 1997, Charles and Elouise Hatfield of Louisville, were traveling in Missouri when they were involved in a collision with a fire truck owned by the City of Montgomery. The driver of the fire truck was found responsible. Elouise Hatfield died from the injuries sustained in the crash, and Charles Hatfield survived the accident but is now deceased. This action is prosecuted by the executor of the estate of Charles Hatfield.

Under Missouri law, the municipality enjoys sovereign immunity except to the extent that the governmental body purchased liability insurance for tort claims. *See* Mo.Rev.Stat. § 537.610(1)(2003). Charles Hatfield and the estate of Elouise Hatfield each recovered $100,000 in damages following the collision, the maximum amount allowed by Missouri law. Those amounts did not cover the aggregate damages caused by the accident. Consequently, the Hatfields filed a claim with Nationwide to collect additional damages under their insurance policy provision providing underinsured motorist coverage. The Hatfields had purchased this optional coverage for two vehicles in exchange for an additional premium. Nationwide rejected the claim because of the exclusion of government-owned vehicles from the definition of what would be covered by underinsured protection. Nationwide reasoned that the policy language excluding accidents involving government-owned vehicles and the language requiring damages to be "due by law" before payment is required under the policy to be controlling. The policy of insurance was purchased in Kentucky and contained the underinsured motorist coverage benefits provision payable in accordance with the underinsured motorist statute, KRS 304.39–320.

The circuit judge granted summary judgment in favor of Nationwide and the Court of Appeals reversed and remanded, finding that the exclusion was against public policy. This Court accepted review.

### I. Policy Language "Due by Law"

In rejecting the claim by the Hatfields, Nationwide relied on the following language in the policy:

> We will pay compensatory damages, including derivative claims, because of bodily injury suffered by you or a relative and *due by law* from the owner or driver of ... an underinsured motor vehicle.... (emphasis ours)

Nationwide argues that because the City of Montgomery is protected from monetary liability by the doctrine of sovereign immunity, the language above prevents the

Hatfields from recovering under their underinsured motorist coverage. We do not agree.

■ In Kentucky, the exclusionary or limiting language in policies of automobile insurance must be clear and unequivocal and such policy language is to be strictly construed against the insurance company and in favor of the extension of coverage. *See Louisville Gas & Electric v. American Ins. Co.*, 412 F.2d 908 (6th Cir.1969); *Eyler v. Nationwide Mutual Fire Ins. Co.*, Ky., 824 S.W.2d 855 (1992); *Wolford v. Wolford*, Ky., 662 S.W.2d 835 (1984); *B. Perini & Sons, Inc. v. Southern Ry. Co.*, Ky., 239 S.W.2d 964 (1951).

In *Preston, supra*, the insured filed a lawsuit in the State of Georgia where his automobile accident had occurred. The jury found that he was 60 percent at fault. Because Georgia has a modified comparative fault statute, the insured was precluded from recovering against the tortfeasor and his Georgia lawsuit was dismissed. Thereafter, the insured filed suit in Kentucky seeking uninsured motorist coverage benefits from his own carrier, USF & G. The carrier rejected the claim relying on the following language in the policy:

> We will pay all sums the insured is legally entitled to recover as compensatory damage from the owner or driver of an uninsured motor vehicle.

Ultimately, we held that an insured was legally entitled to recover damages from an uninsured motorist even though the insured was 60 percent at fault and Georgia law of modified comparative fault precluded recovery. Further, we held that the liability of USF & G is not vicarious or purely derivative, but is based on an independent contract that could be enforced even if the tortfeasor had been unidentified. This Court adopted the "essential facts" approach in interpreting such policy language even though the insured was not capable of obtaining a judgment against the tortfeasor. This approach requires an insured to prove 1) the fault of the uninsured motorist, and 2) the extent of damages caused by the uninsured motorist. *Preston*, cited with approval *Puckett v. Liberty Mutual Ins. Co.*, Ky., 477 S.W.2d 811 (1971), where it was held that a requirement of a judgment was not essential to a claim for uninsured motorist coverage even though the inability to obtain a judgment effectively abolished the subrogation rights of the carrier.

We recognize that the trial judge did not have the benefit of the *Preston* decision when she considered the summary judgment motions in this case. There is no material distinction between the policy language "due by law" used by Nationwide and "legally entitled to recover" used by USF & G.

In *Preston*, this Court cited with approval cases from various foreign jurisdictions which support the essential facts approach. In summary, they are as follows: *Harvey v. Mitchell*, 522 So.2d 771 (Ala.1988); *Hettel v. Rye*, 251 Ark. 868, 475 S.W.2d 536 (1972); *Allstate Ins. Co. v. Elkins*, 63 Ill. App.3d 62, 21 Ill.Dec. 66, 381 N.E.2d 1 (1978); *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174 (Ind.Ct.App.1977); *Patrons Mutual Ins. Ass'n v. Norwood*, 231 Kan. 709, 647 P.2d 1335 (1982); *Reese v. Preferred Risk Mutual Ins. Co.*, 457 S.W.2d 205 (Mo.Ct.App.1970); *Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 858 P.2d 380 (1993); *Satzinger v. Satzinger*, 156 N.J.Super. 215, 383 A.2d 753 (Ch. Div.1978); *In the Matter of the Arbitration between De Luca and MVAI Corp.*, 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966); *Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla.1993); *Sahloff v. Western Casualty & Surety Co.*, 45 Wis.2d 60, 171 N.W.2d 914 (1969).

■ Under the facts here, the policy language in question was not intended to exclude the application of underinsured motorist coverage. It simply requires that the insured establish fault on the part of the underinsured motorist and uncompensated damages sustained as a result of that fault. The policy language is not to be interpreted so as to deny coverage when both essential elements are clearly established.

We are persuaded by the analysis provided by Professor Alan Widiss in his treatise, Widiss, *Uninsured and Underinsured Motorist Coverage*, § 35:10 (1992). He concludes that such phrases should not be interpreted to preclude the right of an insured to recover underinsured motorist insurance when tort immunity either precludes securing or restricts the indemnification from a tortfeasor. A majority of courts in the United States have accepted this interpretation. *See* Jay M. Zitter, *Validity, Construction & Application of Exclusion of Government Vehicles from Uninsured–Motorist Provision*, 58 A.L.R. 5th 511, 1998 WL 210783 (1998). Seventeen states have held that such clauses are void as against public policy while five states are listed as upholding such exclusions. Kentucky is listed among the latter category by reason of the *Delaney, supra,* decision. Most of the cases in the A.L.R. article deal with uninsured coverage as contrasted with underinsured coverage. As noted by the Court of Appeals, this distinction is of critical importance. Uninsured coverage is required by statute and consequently it is not separately bargained for. However, underinsurance coverage must be requested by the insured and a separate additional premium is required.

Such an interpretation of policy language is consistent with other Kentucky case law. In *Philadelphia Indemnity Insurance Co. v. Morris,* Ky., 990 S.W.2d 621 (1999), the issue was whether the exclusive remedy provision of the Workers' Compensation Act barred an employee from recovering underinsured motorist benefits from his employer's motor vehicle insurance policy. This Court observed that a suit to recover underinsured motorist coverage is a direct action against the carrier who alone is the real party in interest. As noted in that case, the purpose of the 1988 revisions to the underinsured motorist statute are to provide full recovery for the insured.

■ The clear intent of the underinsured motorist statute is to allow an insured to purchase additional coverage so as to be fully compensated for damages when injured by the fault of another individual. The inability of a tortfeasor to respond in damages for whatever reason is of no consequence. We cannot interpret the language of the policy to prevent the extension of underinsured motorist benefits to an insured that specifically purchases the coverage for his or her protection. This would be clearly contrary to the expectation of the insured and the intent of the legislature in requiring that such coverage be provided to its citizens upon request.

■ The language used by Nationwide does not compel the interpretation which the company promotes. Another interpretation of this policy language could require the establishment of fault on the underinsured motorist rather than the ability to pay money damages. *Cf. Puckett, supra.* Where a policy of insurance is susceptible to two interpretations, the insured is entitled to the interpretation most favorable to the extension of coverage. *American Ins. Co., supra; Eyler, supra; Wolford, supra,* and *B. Perini & Sons, Inc., supra.*

## II. Legal Right to Recover Damages

■ The policy language contained in the "recovery" provision of the underinsured motorist endorsement in the Nationwide policy does not preclude the recovery of underinsured motorist benefits in this case.

Nationwide contends that the language "a legal right to recover damages" from the "recovery" portion of its underinsurance endorsement, prevents the applicability of its underinsured motorist coverage in this case. The policy language in question states as follows:

RECOVERY

1. Before recovery, we and the insured must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle; and if so,

   b) the amount of such damages.

2. Any judgment against the uninsured or underinsured will be binding on us only if it has our written consent.

Under paragraph 1(a), the insured and the company must first agree on whether there is a legal right to recover damages from the underinsured driver. If there is an available legal right to recover damages from the other driver, then Nationwide could and would require that its insured recover those available damages as an offset and a precondition to any recovery of underinsured motorist coverage benefits. If Nationwide and its insured agree that no such legal right to recover exists, then the only remaining question to be agreed upon is the amount of damages under paragraph 1(b). This policy language clearly recognizes the fact that it is not always necessary for an insured to be able to obtain a judgment or recover indemnification from an underinsured motorist as a precondition for recovery of underinsured coverage benefits.

■ The policy language urged by the company was not intended to require that the Hatfields be able to obtain a judgment for the full amount of their damages against an underinsured motorist before obtaining a recovery from the underinsured coverage benefits. As this Court reasoned in *Preston*, all that was intended is to require that the insured prove the fault of the underinsured motorist and the extent of damages caused by that driver.

## III. Government Vehicle Exclusion

■ Nationwide argues that the language of the policy excludes underinsured motorist coverage for matters involving government-owned vehicles. The policy states:

3. We will not consider as an uninsured motor vehicle or underinsured motor vehicle:

· · ·

   b) any motor vehicle owned by a government unit or agency.

· · ·

The purpose of this language is to avoid responsibility of underinsured claims where the company would not be able to recover subrogation from the tortfeasor who might be protected by sovereign immunity. The unfortunate inability of the company to recover subrogation claims from the wrongdoer is of no consequence to the person covered by an underinsured policy in Kentucky. All that is required is that the insured be able to establish fault and damages before obtaining underinsured motorist coverage. *See* KRS 304.39–320; *Preston; Puckett.*

The language urged by the company as applied to underinsured claims would violate the public policy and purpose of the Motor Vehicle Reparations Act and the

underinsured motorist statute, KRS 304.39–320. Kentucky requires that automobile insurance companies make underinsured coverage available upon request. Once a request is made, it is mandatory that the insurance company provide the coverage for an additional premium. Any attempt to limit or exclude the extension of coverage is clearly contrary to the expressed intent of the underinsured motorist statute and is void and unenforceable.

■ Reliance by Nationwide on *Delaney*, is misplaced. That case was not decided under the underinsured motorist statute and is not supportive of the position of the company here. There are significantly different policy considerations in cases involving underinsured motorist benefits which are materially different from the uninsured motorist laws. The intent of the Motor Vehicle Reparations Act in general and the underinsured motorist statute, KRS 304.39–320, in particular, is to ensure as much as possible that the victim of a motor vehicle accident is fully compensated. The policy exclusion which is the subject of this opinion is clearly contradictory to such a statutory purpose. *Cf. Saxe v. State Farm Auto. Mut. Ins. Co.*, Ky.App., 955 S.W.2d 188 (1997). As stated in *Preston*, the public policy underlying the Kentucky statutes is the compensation of people who are injured by the negligence of uninsured motorists. The public policy regarding underinsured situations is even more compelling.

*Morris, supra*, also supports the position of the insureds. As noted earlier, in *Morris*, this Court observed that a suit to recover underinsured motorist coverage is a direct action against the insurance carrier who alone is the real party in interest. Consequently, claims for underinsured motorist benefits would still exist against the underinsured motorist carrier even though the claim against the worker's compensa-

tion carrier itself might be barred by the exclusive remedy provisions of the Workers' Compensation Act. By comparison, claims against the insurance company here for underinsured coverage would not be barred even though the plaintiffs could be barred from any direct recovery against a municipality protected by sovereign immunity.

Courts in other jurisdictions have consistently held that the government-owned vehicle exclusion is void even in policies of uninsured motorist coverage. *Vaught v. State Farm Fire & Casualty Co.*, 413 F.2d 539 (8th Cir.1969); *Higgins v. Nationwide Mut. Ins. Co.*, 291 Ala. 462, 282 So.2d 301 (1973); *Transportation Ins. Co. v. Martinez*, 183 Ariz. 33, 899 P.2d 194 (Ct.App. 1995); *McClellan v. Sentry Indemnity Co.*, 140 Ariz. 558, 683 P.2d 757 (Ct.App.1984); *Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423 (Del.Super.Ct.1995); *Johns v. Liberty Mut. Fire Ins. Co.*, 337 So.2d 830 (Fla.Dist.Ct.App.1976); *State Farm Mut. Auto. Ins. Co. v. Carlson*, 130 Ga.App. 27, 202 S.E.2d 213 (1973); *Franey v. State Farm Mut. Auto. Ins. Co.*, 5 Ill. App.3d 1040, 285 N.E.2d 151 (1972); *Hillhouse v. Farmers Ins. Co., Inc.*, 226 Kan. 68, 595 P.2d 1102 (1979); *Powell v. Allstate Ins. Co.*, 233 So.2d 38 (La.Ct.App.1970); *Young v. Greater Portland Transit Dist.*, 535 A.2d 417 (Me.1987); *Jennings v. City of Dayton*, 114 Ohio App.3d 144, 682 N.E.2d 1070 (1996); *Parrish v. Mid–American Fire & Casualty Co.*, 63 Ohio App.3d 1, 577 N.E.2d 1109 (1989); *Watters v. Dairyland Ins. Co.*, 50 Ohio App.2d 106, 361 N.E.2d 1068 (1976); *State Farm Auto. Ins. Co. v. Greer*, 777 P.2d 941 (Okla.1989); *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448 (R.I.1996). *See also*, Widiss, *Uninsured and Underinsured Motorist Ins.*, § 8.8 (1992) and additional cases cited therein.

Cases in other jurisdictions which have addressed the validity of the government-owned vehicle exclusion under policies of underinsured motorist coverage have also consistently held such exclusionary language void and unenforceable. *Ronning v. Citizens Security Mut. Ins. Co.,* 557 N.W.2d 363 (Minn.Ct.App.1996); *Parrish, supra; Greer, supra; Karlson v. City of Oklahoma City,* 711 P.2d 72 (Okla.1985); *Kyrkos v. State Farm Mut. Auto. Ins. Co.,* 121 Wash.2d 669, 852 P.2d 1078 (1993).

It is of some interest to observe that in Missouri, the government-owned vehicle exclusion is void as against public policy. *See Martin v. State Farm Mut. Auto. Ins. Co.,* 755 S.W.2d 638 (1988). *See also Welch v. Automobile Club Inter–Insurance Exchange,* 948 S.W.2d 718 (Mo.Ct. App.1997); *Gibbs v. National General Ins. Co.,* 938 S.W.2d 600 (Mo.Ct.App.1997).

The policy provision seeking to exclude government-owned vehicles is contrary to the express intent of KMVRA and the Underinsured Motorist Statute. The Kentucky Underinsured Motorist Statute is part of KMVRA and must be construed with the Act.

### IV. Reasonable Expectations

Nationwide argues that the Court of Appeals erred in applying the doctrine of "reasonable expectations" to unambiguous contract language. It contends that the contract language is clear and does not violate public policy.

*Allstate Ins. Co. v. Dicke,* Ky., 862 S.W.2d 327 (1993), holds that it is contrary to public policy to deny items of personal insurance including underinsured motorist coverage when such coverage has been bought and paid for since there is a reasonable expectation that the coverage will be provided. Here, the Hatfields had a reasonable expectation that the additional premiums they paid for underinsured mo-

torist insurance coverage would compensate them if they were injured by a vehicle with insufficient insurance coverage. By virtue of the sovereign immunity cap limitation, the fire truck which struck the Hatfields had insufficient coverage. Accordingly, the Hatfields were entitled to the full benefit of the underinsured coverage that they had purchased.

We realize that both parties to this appeal have cited numerous cases in support of their respective positions. This Court has also recited a variety of cases from foreign jurisdictions in the hope that they might be of benefit to the members of the legal profession and the people of Kentucky. We must also state that the authorities cited by the insurance company have not been persuasive.

It is the decision of this Court that an insurance policy provision that excludes government-owned vehicles from underinsured coverage is against public policy and therefore is void and unenforceable.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., and STUMBO, J., concur.

GRAVES, J., concurs by separate opinion.

COOPER, J., dissents by separate opinion and is joined by JOHNSTONE, J.

KELLER, J., dissents by separate opinion.

GRAVES, Justice, concurring.

I concur with the result reached by the majority.

Nationwide Mutual Insurance Company received premiums to provide protection from losses caused by a class of tortfeasors who are not fully financially responsible. Therefore, economic efficiency suggests

that the loss be assigned to Nationwide Mutual Insurance Company, and protection should not be avoided by exclusion from the class due to the nature of the tortfeasors. Once the premium has been accepted and the loss has occurred, focus should be on reparation for the loss rather than the nature of the tortfeasor.

COOPER, Justice, dissenting.

On September 23, 1997, in Montgomery City, Missouri, a vehicle owned and occupied by C. Gay Hatfield and his wife, Elouise W. Hatfield, was struck by a fire truck owned by Montgomery City, a municipality, and operated by its employee, Karl J. Rodieck. Mr. Hatfield sustained personal injuries; Mrs. Hatfield was killed. Under Missouri law, Montgomery City was cloaked with sovereign immunity subject to a partial waiver up to a maximum, at that time, of $100,000 per person and $1,000,000 per accident. Mo.Rev.Stat. §§ 537.600.1(1), 537.610.2;[1] *Thompson v. City of West Plains*, 935 S.W.2d 334, 335 (Mo.Ct.App.1996) (municipal corporation is public entity within meaning of sovereign immunity statutes).

> The *liability* of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence....

Mo.Rev.Stat. § 537.610.2 (emphasis added). (Remember the word "liability.")

As authorized by Mo.Rev.Stat. § 537.610.1, Montgomery City had pur-chased a policy of liability insurance from United States Fidelity & Guaranty Company ("U.S.F. & G.") with limits of $100,000 per person and $1,000,000 per accident to cover its non-immune exposure. On September 23, 1997, that was the maximum sum recoverable in damages by a person injured or killed in a motor vehicle accident in Missouri because of the negligence of a municipality. To the extent the person's claim exceeded $100,000, recovery was barred by sovereign immunity.

> [N]o amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance....

Mo.Rev.Stat. § 537.610.1. U.S.F. & G. paid its policy limits of $200,000 to Mr. Hatfield to settle his injury claim and the claim he asserted for the wrongful death of his wife.[2]

On the date of the accident, the Hatfields were the named insureds of a policy of insurance issued by Appellant, Nationwide Mutual Insurance Company. The policy covered two vehicles owned by the Hatfields and provided, *inter alia*, basic reparation benefits (BRB) coverage, for which they paid a premium of $31.20 for one vehicle and $14.70 for the other vehicle, uninsured motorists (UM) coverage, for which they paid a single premium of $18.00 for both vehicles, and underinsured motorists (UIM) coverage, for which they paid a single premium of $27.20 for both

---

**1.** The statute was amended in 1999 to raise the limit to $300,000 per person and $2,000,000 per accident. 1999 Mo. Laws, S.B. 295, § A(1), (2).

**2.** Under Mo.Rev.Stat. § 537.080.1(1), Mr. Hatfield, as surviving spouse, could bring an action in his own capacity for the wrongful death of his deceased spouse. *Compare* KRS 411.130(1) which provides that a wrongful death action in Kentucky "shall be prosecuted by the personal representative."

vehicles.[3] Nationwide paid Hatfield its BRB limits of $20,000 for his expenses, KRS 304.39–020(5)(a)–(c), and for the death of his wife. *Id.* at (5)(d), (e). Hatfield then filed this action in the Jefferson, Kentucky, Circuit Court both "individually and as the surviving spouse of Elouise W. Hatfield, deceased," seeking payment of the limits of the UIM coverage of Nationwide's policy. In addition to the fact that Mr. Hatfield had no standing to sue Nationwide "as the surviving spouse" of his deceased wife,[4] neither the record nor Hatfield's complaint indicate that Nationwide consented to Hatfield's settlement with U.S.F. & G. or that Hatfield gave Nationwide prior notice of the settlement as required by the policy's UIM endorsement, by KRS 304.39–320(3), and by *Coots v. Allstate Insurance Co.*, Ky., 853 S.W.2d 895, 900 (1993).

Regardless, Hatfield's claims are specifically excluded by the provisions of the UIM statute, KRS 304.39–320(2), and by the "terms and conditions" of the policy's UIM endorsement as authorized by the UIM statute, *id.*, because (1) the claimed uncompensated damages are not "due by law" from the owner or driver of an underinsured vehicle, as required by the policy; (2) he was not "legally entitled to recover," as required by the statute, nor had a "legal right to recover," as required by the policy, the uncompensated damages from the owner or driver of an underinsured vehicle; and (3) the policy excludes a government-owned vehicle from the definition of an underinsured vehicle. The plurality opinion essentially holds that any "terms and conditions" of an insurance contract that operate to limit the circumstances under which UIM coverage applies violate "public policy." *Ante*, at 41–42. "Public policy," of course, is a convenient mantra that obviates the burden of careful legal analysis: "It is so because public policy requires it." However, public policy is created and defined by the legislature, not the judiciary.

> The establishment of public policy is granted to the legislature alone. . . . It is the prerogative of the legislature to declare that acts constitute a violation of public policy.

*Commonwealth ex rel. Cowan v. Wilkinson*, Ky., 828 S.W.2d 610, 614 (1992) (citing Ky. Const. § 27). "The establishment of public policy is not within the authority of the courts." *Ky. Farm Bureau Mut. Ins. Co. v. Thompson*, Ky., 1 S.W.3d 475, 476–77 (1999) (internal quotation omitted). As will be shown *infra*, the legislature has specifically authorized the application of

---

3. *See Marcum v. Rice*, Ky., 987 S.W.2d 789, 792 (1999) (stacking of UIM coverages for multiple vehicles not permitted where only a single premium was charged).

4. Under Kentucky law, an action for money owed to a deceased must be brought by the personal representative and cannot be brought by an heir unless a personal representative has been appointed and has refused to bring the action. *Burchett v. Burchett*, 226 Ky. 5, 10 S.W.2d 460, 460 (1928); *see also McCampbell v. McCampbell*, 276 Ky. 567, 124 S.W.2d 794, 797 (1939); *Moore's Adm'x v. Brookins*, 263 Ky. 519, 92 S.W.2d 813, 814 (1936); *Fowler v. Rothrock's Ex'rs*, 261 Ky. 664, 88 S.W.2d 667, 668 (1935); *Sowle v. Potter*, 223 Ky. 136, 3 S.W.2d 174, 175 (1928);

*Bennett v. Bennett's Adm'r*, 134 Ky. 444, 120 S.W. 372, 373 (1909); *McChord v. Fisher's Heirs*, 52 Ky. 154, 155 (13 B. Mon. 193, 194–95) (1852); *cf.* KRS 411.140; KRS 413.180.

Mr. Hatfield also died prior to the filing of the appeal in this case. While the executor of his estate was substituted as a party plaintiff for him, KRS 411.140, KRS 395.278, CR 25.01, no personal representative has ever entered an appearance on behalf of Mrs. Hatfield's estate, nor was an appeal filed on behalf of her estate. *Perkins v. Sims*, Ky., 350 S.W.2d 715, 718 (1961); *Mason v. Anderson*, Ky., 242 S.W.2d 1011 (1951). The plurality opinion simply ignores these jurisdictional deficiencies.

"terms and conditions" to UIM coverage so that the plurality opinion's holding to the contrary is, itself, a violation of "public policy."

Because UIM coverage has been characterized as the "younger sibling" of UM coverage, *Coots, supra,* at 898, a review of our encounters with "terms and conditions" authorized by and applicable to both coverages is appropriate to the resolution of these issues. Of course, both coverages are creatures of statute; thus, our task should be to ascertain and give effect to the intent of the legislature (the *real* public policy), not to invalidate provisions authorized by statute because they are contrary to our own notions of what that public policy ought to be.

## I. UNINSURED MOTORIST COVERAGE.

The UM statute, KRS 304.20–020, originally enacted in 1966 as KRS 304.682, provides in pertinent part as follows:

(1) *No automobile liability or motor vehicle liability policy of insurance* ... shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein ... in limits for bodily injury or death set forth in KRS 304.39–110 ... for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom; provided that the named insured shall have the right to reject in writing such coverage....

(2) For the purpose of this coverage the term "uninsured motor vehicle" shall, *subject to the terms and condi-*

*tions of such coverage,* be deemed to include. . . .

(Emphasis added.)

Thus, *every policy* of motor vehicle liability insurance must include UM coverage unless rejected in writing by the named insured; the coverage must be in at least the minimum limits established for bodily injury liability coverage (presently $25,000 per person and $50,000 per accident); payment is dependent upon the insured being "legally entitled to recover" damages from the uninsured motorist; and the definition of an "uninsured motor vehicle" is subject to "terms and conditions" of coverage. "Reasonable exclusions fall within the 'terms and conditions' to which the statute's application is subject." *Preferred Risk Mut. Ins. Co. v. Oliver,* Ky., 551 S.W.2d 574, 577 (1977).

> [I]n enacting KRS 304.20–020, the General Assembly did not presume to write an uninsured motorist policy, but merely gave a general outline of the coverage required, the legislature recognizing that the limits and terms of the statute's general outline of required coverage would of necessity be specifically defined by reasonable "terms and conditions" in the various insurance contracts.

*State Farm Mut. Auto. Ins. Co. v. Christian,* Ky., 555 S.W.2d 571, 572 (1977). The only "public policy" established by this statute is that *every policy of automobile insurance must include UM coverage. Ohio Cas. Ins. Co. v. Stanfield,* Ky., 581 S.W.2d 555, 559 (1979). And that is why most of the litigation of UM coverage has focused on so-called "anti-stacking" clauses that have the effect of voiding altogether the statutorily mandated coverage in some policies as opposed to providing "terms and conditions" that merely limit the coverage provided.

In *Meridian Mutual Insurance Co. v. Siddons,* Ky., 451 S.W.2d 831 (1970), the

insurer had issued two automobile insurance policies to the named insured, each policy covering a separate vehicle. Each policy contained an "other insurance" clause that precluded payment under a particular coverage endorsement if the same coverage was provided by another policy, *i.e.*, the clause precluded "stacking" identical coverages contained in separate policies. In *Siddons*, one policy provided UM coverage for which a separate premium was paid. The other policy did not provide UM coverage and, of course, no separate premium was paid. The insured's stepson, an "additional insured" under both policies, was killed in an accident for which his estate was legally entitled to recover damages against an uninsured motorist.

*Siddons* held that the estate was entitled to UM payments under both policies. Since the statute mandates that each "policy" provide UM coverage, the "other insurance" clause was invalid as applied to that coverage because its effect was to void the UM coverage in one of the policies; and, because of the same statutory mandate, it was immaterial that the second policy did not contain a UM endorsement or that a premium had not been paid for UM coverage. *Id.* at 834. Thus, *Siddons* held that anyone insured by a policy of automobile liability insurance is entitled to UM coverage under that policy even if (1) the same coverage is provided by another policy, (2) the policy contains no provision for UM coverage, and (3) no premium was paid for such coverage. (The latter holding attains significance when considering the ramifications of the holding of today's plurality opinion that the payment of a premium triggers a "public policy" that precludes any terms and conditions that limit, but do not void, UIM coverage, *ante*, at 40, 41—as opposed to triggering the UIM coverage subject to the terms and conditions upon which the premium was based.)

*Siddons* was reaffirmed in *Allstate Insurance Co. v. Napier*, Ky., 505 S.W.2d 169, 171–72 (1974) (insured injured while operating a vehicle insured by one policy was entitled to payment of UM coverage under both that policy and a separate policy insuring another vehicle owned by the insured), and *Zurich Insurance Co. v. Hall*, Ky., 516 S.W.2d 861, 863–64 (1974) (estate of deceased passenger in a vehicle owned and operated by another entitled to UM coverages of both her own policy and the operator's policy, despite the fact that she had not paid the premium for the operator's policy).

*Ohio Casualty v. Stanfield, supra,* addressed whether a UM claimant could stack separate UM coverages for multiple vehicles insured by the same policy. The claimant was operating a vehicle owned by his employer when he was injured in a collision with an uninsured motorist. He sought to stack the coverages for each of the sixty-three vehicles insured by his employer's fleet policy and the coverages for each of two vehicles insured by his own personal policy. Separate premiums had been paid for the UM coverages with respect to each vehicle insured by each policy. *Stanfield* distinguished an "insured of the first class" who paid the premium (or on whose behalf the premium was paid, *i.e.*, an "additional insured" as in *Siddons* ) and an "insured of the second class" who did not pay the premium. An "insured of the first class" is afforded coverage for injuries caused by an uninsured motorist while occupying his own or another's vehicle or while a pedestrian, *Siddons, supra,* at 832 n. 1, whereas an "insured of the second class" is insured by the policy only because he/she is an occupant of the insured vehicle and is afforded only the coverage applicable to that vehicle. *Stanfield,*

*supra*, at 557. *Stanfield* held that an insured of the first class could stack the coverages applicable to other vehicles insured by the same policy but that an insured of the second class could not. *Id.* at 559. Thus, the claimant in *Stanfield* could stack the coverages for each vehicle in his personal policy but could not stack the coverages for each vehicle in his employer's fleet policy. *Id.*

In reaching that conclusion, *Stanfield* did not rely on "public policy," *i.e.*, the mandate of the UM statute that *every policy* of insurance provide UM coverage (obviously, both policies in *Stanfield* provided UM coverage), or hold that the payment of a premium precluded "terms and conditions" of coverage, but only that the payment of a premium triggered the applicable coverage for which the premium was paid as a *quid pro quo.*

> Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages.

*Id.* (quoting *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34, 42 (1969)[5]).

*Hamilton v. Allstate Insurance Co.*, Ky., 789 S.W.2d 751 (1990), held under facts similar to those in *Zurich v. Hall, supra*, that the standard "other insurance" clause in the insured's personal policy could not preclude stacking of the UM coverages for three vehicles in that policy despite the fact that the insured had already been paid the UM coverage of a policy insuring the owner of the vehicle in which she was a passenger at the time of the accident. *Id.* at 754. And *Chaffin v. Kentucky Farm Bureau Insurance Co.*, Ky., 789 S.W.2d 754 (1990), held under facts identical to those in *Allstate v. Napier, supra*, that the

standard "other vehicle" clause in the policy covering the vehicle occupied by the insured at the time of the accident could not preclude stacking UM coverages provided by other policies covering other vehicles owned by the insured. *Id.* at 757–58. *Chaffin* struck down the "other vehicle" exclusion as "so broadly drawn as to obfuscate its purpose in prevention of fraud" and to "prohibit[ ] claims in a multitude of circumstances in which collusion is not a reasonable possibility." *Id.* at 757. *Chaffin* then cited the government-owned vehicle exclusion upheld in *Commercial Union Insurance Co. v. Delaney*, Ky., 550 S.W.2d 499 (1977), as an example of a valid, narrowly drawn term and condition applicable to UM coverage. *Chaffin, supra*, at 757. (More on *Delaney, infra.*) In addition to the exclusion recognized as valid in *Chaffin* and *Delaney*, we have twice upheld the standard "motorcycle exclusion" to UM coverage. *State Farm v. Christian, supra; Preferred Risk v. Oliver, supra.*

In *Masler v. State Farm Mutual Automobile Insurance Co.*, Ky., 894 S.W.2d 633 (1995), we summarized the nature of UM coverage as follows:

> Uninsured motorist insurance is a fault-based coverage obligating insurers to provide indemnification for injuries caused ... by uninsured ... motorists. This type of insurance coverage is neither an all-risk insurance designed to provide coverage for all injuries incurred, nor is it a no-fault motor vehicle insurance that provides coverage without regard to whether a plaintiff is *legally entitled to recover* damages from an uninsured ... motorist.

*Id.* at 635 (emphasis added). *See also Phillips v. Robinson*, Ky.App., 548 S.W.2d

---

5. *Sturdy* was subsequently abrogated by the 1981 enactment of Kansas' anti-stacking statute, Kan. Stat. Ann. § 40–284(d). *Farmers Ins. Co. v. Gilbert*, 14 Kan.App.2d 395, 791 P.2d 742, 747 (1990).

511, 513 (1976) ("[T]he purpose of uninsured vehicle coverage is to insure against loss resulting from *liability imposed by law* and no special contract is created which would circumvent legal liability on the part of the owner or operator of the uninsured motor vehicle.") (emphasis added, internal quotation omitted), *rev'd on other grounds*, 557 S.W.2d 202 (1977). These principles apply as well to the "younger sibling" of UM coverage.

## II. UNDERINSURED MOTORIST COVERAGE.

KRS 304.39–320 provides *inter alia:*

(1) As used in this section, "underinsured motorist" means a party with motor vehicle liability insurance coverage in an amount *less than a judgment recovered against that party* for damages on account of injury due to a motor vehicle accident.

(2) Every insurer shall *make available upon request* to its insureds underinsured motorist coverage, whereby *subject to the terms and conditions of such coverage* not inconsistent with this section the insurance company agrees to pay its own insured for such *uncompensated damages as he may recover* on account of injury due to a motor vehicle accident because the *judgment recovered against* the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

(Emphasis added.)

Unlike the UM statute, the UIM statute does not mandate that *every policy provide UIM coverage.* It only mandates that *every insurer make UIM coverage available* to the insured upon request. Thus,

the statute does not support the same "public policy" argument that precludes anti-stacking clauses that, contrary to the "every policy" requirement of the UM statute, void the coverage of one policy if the same coverage is provided in another policy. In *Butler v. Robinette,* Ky., 614 S.W.2d 944 (1981), we declined to extend the *Siddons* line of cases to anti-stacking provisions applicable to liability coverages provided in separate policies covering separate vehicles owned by the insured, despite the fact that separate premiums had been paid for those coverages, because "the statute [requiring liability coverage] does not require each *policy* to contain the minimum limits set out, but rather that each *vehicle* be covered for these amounts." *Id.* at 947 (emphasis added).[6] Nor does the UIM statute require that each policy contain UIM coverage; thus, neither does the *Siddons* line of cases have any application to UIM coverage.

The "younger sibling" relationship between the UM and UIM statutes is conceptually identical to the relationship between the BRB statutes, KRS 304.39–080(5) and KRS 304.39–110(1)(c), and the added reparation benefits (ARB) statute, KRS 304.39–140, which also define coverages that are personal to the insured. While BRB coverage is mandatory, ARB coverage is optional. *Stevenson, supra,* note 6, at 722–24. As does the almost identical language in the UIM statute, the ARB statute provides that "each reparation obligor [insurer] of the owner of a vehicle required to be registered in this Commonwealth shall, upon the request of a reparation insured, be required to provide added reparation benefits." KRS 304.39–140(1). The ARB statute also authorizes "terms, conditions and exclu-

---

6. *See also Stevenson ex rel. Stevenson v. Anthem Cas. Ins. Group,* Ky., 15 S.W.3d 720, 721–22 (1999) (reiterating that liability coverages cannot be stacked).

sions." KRS 304.39–140(2). Thus, in *Stevenson, supra* note 6, we upheld a provision that did not void the ARB coverage altogether but limited it to persons who were either named insureds or relatives of a named insured. *Id.* at 724.

Like UM coverage (and liability coverage), BRB coverage is mandatory. *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865, 866 (1981). However, like ARB coverage, UIM coverage is optional. *Mullins v. Commonwealth Life Ins. Co.,* Ky., 839 S.W.2d 245, 247 (1992); *Flowers v. Wells,* Ky.App., 602 S.W.2d 179, 180 (1980). The same "public policy" considerations that pertain to mandatory coverages do not pertain to optional coverages. *Bishop, supra,* noted that whereas BRB coverage is "untouchable," ARB coverage is subject to exclusions. *Id.* at 866. *See also Stevenson, supra* note 6, at 723. And, as observed in *State Farm Mutual Automobile Insurance Co. v. Mattox,* Ky., 862 S.W.2d 325 (1993), "[w]e are unable to rationally distinguish between the statutory and contractual structure of added reparation benefits and underinsured motorists coverage." *Id.* at 326.

*Allstate Insurance Co. v. Dicke,* Ky., 862 S.W.2d 327 (1993), held that the same "public policy" that precludes application of anti-stacking provisions to UM coverages in separate policies applies as well to the application of anti-stacking provisions to UIM coverages in the same policy. *Id.* at 329. In fact, no "public policy" precludes application of anti-stacking clauses to UIM coverages even if the coverages are in separate policies. As noted *supra,* unlike the UM statute, KRS 304.39–320(2) only mandates that UIM coverage be *made available to the insured,* not that it be *provided in every policy;* thus, if UIM coverage is provided "to the insured" in single limits in one policy, the coverage has been made available and the mandate of the statute, *i.e.,* the "public policy," has been satisfied regardless of how many policies are owned by the insured or how many vehicles are insured by the policy.

However, there is support for the result reached in *Dicke* outside the parameters of a non-existent "public policy." Because the claimant in *Dicke* was an insured of the first class,[7] the case could have been decided under the *quid pro quo* analysis in *Ohio Casualty v. Stanfield, supra.*[8] Com-

**7.** The opinion in *Dicke* does not state whether the claimant's decedent was the owner of the policy, and a footnote in *James v. James,* Ky., 25 S.W.3d 110, 113 n. 1 (2000), suggests that the claimant in *Dicke* was, in fact, an insured of the second class. *James* seems to have made that assumption because in *Dicke,* as in *James,* the claimant's decedent was a guest passenger in a vehicle that was owned and insured by another. However, a review of the record in *Dicke,* No. 92–SC–442–DG, reveals that the claim in that case, unlike the claim in *James,* was against the UIM coverage of the claimant's decedent's own policy for which the claimant's decedent had paid the premium. The underinsured tortfeasor in *Dicke* was the owner/operator of the vehicle in which the claimant's decedent was a guest passenger. Thus, the claimant recovered the owner/operator's liability coverage and her decedent's own UIM coverage. In *James,* the

underinsured tortfeasor was the operator of a different vehicle and the UIM claim was not against the claimant's own UIM coverage but against the UIM coverage of a policy owned by the owner/operator of the vehicle in which the claimant was a guest passenger.

**8.** However, there was undisputed actuarial evidence in *Dicke* that the extra premiums charged for the additional vehicles were not premised upon the prospect of the insured multiplying the coverages applicable to all of the vehicles covered by the policy for injuries sustained in a single accident (in which event the premiums would have been much higher), but solely on the fact that the likelihood of an accident was increased by the mere fact of ownership of multiple vehicles. Thus, while a separate premium was charged for each additional vehicle, the premiums were not the same for each vehicle but were charged in

pare *James v. James, supra* note 7, at 112–14, in which we held that a guest passenger was precluded from stacking the UIM coverages applicable to other vehicles insured by the owner/operator's policy because the guest passenger had not paid the premiums and was, therefore, an insured of the second class. Of course, even the *quid pro quo* analysis does not carry the same weight when applied to UIM coverage because the UIM statute is satisfied by providing one single-limit UIM coverage within one policy even if there are multiple policies or if one policy insures multiple vehicles. Thus, in *Marcum v. Rice, supra* note 3, we abandoned the "public policy" rationale of *Dicke* and held under a *quid pro quo* analysis that UIM coverage in a single policy insuring multiple vehicles could not be stacked where a single premium was charged for a single UIM coverage applicable to all of the insured vehicles. *Id.* at 791. It is a reasonable prediction that all subsequent motor vehicle liability insurance policies will be revised to conform to this single-policy, single-premium model, and the concept of stacking will be ultimately relegated to a historical footnote.

While the *quid pro quo* (premium paid) analysis in our case law could arguably impact a policy provision that voids altogether the coverage for which a premium was paid, the same is not true with respect to a term, condition, or exclusion that only, as noted in *Chaffin, supra,* at 757, limits the circumstances under which the cover-

age will be paid. Such provisions are expressly authorized by the UIM statute (the "public policy") and, as held in *Stevenson v. Anthem, supra* note 6, "[p]ermissive language in a statute obviously exists for a reason and must be given weight under the rules of construction." *Id.* at 724 (internal quotation omitted). Presumably, the amount of the premium is premised upon the presence or absence of such terms, conditions and exclusions in the coverage endorsement. The coverage is not "illusory;" the insured simply gets what was paid for, no more, no less, *Marcum v. Rice, supra* note 3, at 792, and the *quid pro quo* requirement is satisfied.

Thus, exclusions in UIM endorsements have been upheld with respect to an "owned motorcycle," *Baxter v. Safeco Ins. Co.,* Ky.App., 46 S.W.3d 577, 579 (2001), an "owned vehicle," *Windham v. Cunningham,* Ky.App., 902 S.W.2d 838, 841 (1995), and "punitive damages," *Hodgin v. Allstate Ins. Co.,* Ky.App., 935 S.W.2d 614, 617 (1996). And in *Motorists Mutual Insurance Co. v. Glass,* Ky., 996 S.W.2d 437 (1997), an "owned vehicle" exclusion that precluded an insured from collecting both the liability and UIM coverages of the same policy was upheld because "[t]he purpose of UIM coverage is not to compensate the insured or his additional insureds from his own failure to purchase sufficient liability insurance." *Id.* at 450 (quoting *Windham, supra,* at 841). *See also Pridham v. State Farm Mut. Ins. Co.,* Ky.App.,

decreasing increments as each additional vehicle was added. The probable accuracy of that evidence is exemplified by the fact that the premiums paid by the Hatfields for BRB coverage (which cannot be stacked per KRS 304.39–020(2) and *Stevenson, supra* note 6, at 723) was not the same for each vehicle but rather $31.20 for "vehicle number 1" and only $14.70 for "vehicle number 2." That disparity would make no sense if the coverages could be stacked because, logically, the premium should be the same for the same coverage applicable personally to the same insured. In fact, insurers typically offer UIM coverage only up to the same limits as the insured's liability coverage so as to preclude the anomaly created by *Dicke* that permitted the insured to effectively provide liability coverage for the tortfeasor in an amount that was four times greater than the liability coverage he had provided for a potential liability claim against himself.

903 S.W.2d 909, 911 (1995). It was argued as a defense to all of the above-described exclusions that the claimant had paid a premium for UIM coverage that was not provided. In each case, the argument was rejected and the validity of the exclusion was upheld. Obviously, the mere payment of a premium does not trigger a "public policy" that voids all terms, conditions and exclusions in a UIM endorsement.

### III. "DUE BY LAW"/"LEGAL RIGHT TO RECOVER."

The Hatfields' policy contains the following two provisions ("terms and conditions") that are in concert with the UIM statute and that, along with the statute, preclude payment of the UIM coverage in this case, *viz:*

**COVERAGE AGREEMENT**

We will pay compensatory damages including derivative claims, because of bodily injury suffered by you or a relative and *due by law from the owner or driver of:*

. . .

2. an underinsured motor vehicle. . . .

**RECOVERY**

1. Before recovery, we and the insured must agree on two points:

a) whether there is a *legal right to recover* damages from the owner or driver of an . . . underinsured motor vehicle; *and if so*

b) the amount of such damages.

(Emphasis added.)

The policy language limiting recovery to damages that the insured is "due by law" and has a "legal right to recover" from an underinsured tortfeasor is consistent with the "judgment recovered against" requirement of the UIM statute, KRS 304.39–320(1), (2), *supra.* In *Kentucky Central Insurance Co. v. Kempf,* Ky.App., 813 S.W.2d 829 (1991), the Court of Appeals held that the "judgment recovered against" condition meant that entitlement to payment under the UIM coverage was preconditioned upon the insured obtaining an actual judgment against the underinsured motorist. *Id.* at 831. As applied to the facts in *Kempf,* this holding did not preclude an insured from collecting the UIM coverage of his policy but rather precluded the UIM insurer that had settled the insured's UIM claim from enforcing its subrogation right against the underinsured tortfeasor. However, the *unintended* result of *Kempf* was to preclude any future settlements between UIM insureds and underinsured motorists because no claim could be made against the insured's UIM coverage unless and until an actual judgment was obtained against the underinsured motorist.

*Kempf*'s brief life ended when an attempt was made to apply its holding to a scenario where an insured had settled with, rather than obtained a judgment against, the underinsured tortfeasor and thereby, per *Kempf,* forfeited any UIM claim. To avoid that result, *Coots v. Allstate, supra,* reconstrued the "judgment recovered against" language in the UIM statute as reflecting the same legislative intent as the "legally entitled to recover" language in the UM statute, 853 S.W.2d at 899, *i.e.,* the UIM statute does not require that the insured actually recover a judgment against the underinsured motorist but only that the insured *could* recover a judgment against the underinsured motorist. Thus, "judgment recovered against" means "legally entitled to recover" which means "could recover a judgment against." The problem faced by today's plurality opinion is how to reach the desired result of paying Nationwide's UIM coverage to an insured who "could *not* recover a judgment against" the adverse motorist because the adverse motorist is immune from

tort liability. The solution, of course, is to reconstrue the "judgment recovered against" language of the UIM statute to mean something other than "could recover a judgment against."

At one point, the plurality opinion actually interprets the "legal right to recover" language in the RECOVERY clause of the policy's UIM endorsement to mean that the insured is entitled to UIM payments *only if* the insured *does not* have a legal right to recover from the tortfeasor, *ante,* at 41, thus construing "and if so" to mean "and if not." Under this construction, the UIM coverage applies *only if,* as here, a judgment could *not* be recovered against the underinsured motorist. That construction is, indeed, advanced by Hatfield (Appellee's brief, at 13–14) who, of course, is concerned only with the result of this particular case and not its precedential impact on future cases—and that construction does, in fact, support the result reached by the plurality in this case. However, that short-sighted construction, like the holding in *Kempf, supra,* would have a disastrous impact on the vast majority of future UIM cases, *i.e.,* any case in which the tortfeasor is not cloaked with immunity. I believe the provision means exactly what it says and what *Coots* said the UIM statute requires: UIM coverage applies only if the insured "could recover a judgment against" the tortfeasor for the full amount of the insured's damages though the tortfeasor's liability insurance coverage is insufficient to pay the full amount of those damages; but if the insured *could not* recover a judgment against the tortfeasor for the full amount of damages because the tortfeasor is, *e.g.,* immune from liability, either wholly or partially, neither is the insured entitled to recover against the UIM coverage. As one court has succinctly put it, "[a]n immune defendant is not an uninsured defendant." *Bruck v. Pa. Nat. Ins. Cos.,* 449 Pa.Super. 22, 672 A.2d 1335, 1339 (1996). Even more obviously, a partially immune defendant is not an underinsured defendant.

Ignoring the plain language of both the policy and the statute, as construed by *Coots,* the plurality opinion then deletes the "could recover a judgment against" condition of KRS 304.39–320 (the only possible meaning of the statutory language, "judgment recovered against," other than the "plain meaning" applied in *Kempf*) and holds that payment under the UIM endorsement is conditioned only upon proof of (1) fault on the part of the adverse motorist and (2) consequent injury to the insured. *Ante,* at 39. Thus, proof of the *liability* of the adverse motorist, *i.e.,* that a judgment could be recovered against the adverse motorist, would no longer be required. The plurality dubs its new construction of the UIM statute the "essential facts approach," a concept borrowed from *United States Fidelity & Guaranty Co. v. Preston,* Ky., 26 S.W.3d 145 (2000), in which the majority opinion deleted the "legally entitled to recover" language from the UM statute so that the insured in that case could recover under the UM coverage of her policy *even though she had already tried and lost her liability case against the uninsured alleged tortfeasor* so that, of course, she was not "legally entitled to recover" anything from that person. *Id.* at 148.

*Preston* attempted to legitimize its holding with the remarkable claim that the "essential facts approach" was based on the holding in *Coots,* even though that "approach" is the diametrical opposite of *Coots*'s holding that "legally entitled to recover" means "could recover a judgment against." To justify this assertion, *Preston* was forced to quote *Coots* out of context in one instance and to misquote *Coots* in another. First, *Preston* quoted *Coots*

for the proposition that "coverage for damages caused by an uninsured motorist 'exists without regard to whether the obligation of the tortfeasor can be reduced to judgment.'" *Preston, supra*, at 148 (quoting *Coots, supra*, at 898). In fact, at that point in the opinion, *Coots* was only referring to the holding in *Puckett v. Liberty Mutual Insurance Co.*, Ky., 477 S.W.2d 811 (1971), that an action for UM payments can be brought against the insurer without first obtaining an actual judgment against the uninsured motorist or joining the uninsured motorist as a party to the action against the insurer. *Coots, supra*, at 898–99 (*citing Puckett, supra*, at 814).[9] In the same paragraph, however, *Coots* also explained that, while the insurer can be sued without obtaining a judgment against the tortfeasor, "*the potential liability* of the uninsured motorist and the amount of damages he caused *must be established* in the suit against the insurer in order to measure the insurer's obligation to the insured under the policy." *Coots, supra*, at 898 (emphasis added). Liability, of course, requires an inquiry into more than mere fault, *e.g.*, whether the tortfeasor is immune from tort liability because of the workers' compensation exclusive remedy provision, KRS 342.690, or, as here, because the tortfeasor is cloaked with sovereign immunity.

Second, *Preston* quoted *Coots* as saying "that a claimant must prove *the* 'essential facts' to recover UM benefits from an insurer" [and] "*[t]hese* essential facts are that 'the offending motorist is a tortfeasor,' and 'the amount of damages caused by the offending motorist.'" *Preston, supra*, at 148 (purporting to quote *Coots, supra*, at 899) (emphasis added). What *Coots* actually said was:

> In both [UM and UIM coverages] proof the offending motorist is a tortfeasor and proof of the amount of damages caused by the offending motorist *are not preconditions to coverage, but only essential facts* that must be proved before the insured can recover judgment in a lawsuit against the insurer on the contract of insurance.

*Coots, supra*, at 899 (emphasis added). *Coots* did not say that negligence and damages were "*the* essential facts," *i.e., the only* essential facts,[10] but only "essential facts" and went on to explain in the same paragraph:

> [T]he only rational interpretation of the statute is, while the policy limits specified in the tortfeasor's policy must be exhausted before the UIM carrier has an obligation to pay, *the liability of the tortfeasor* and the amount of damages sustained are elements that *must be established* in measuring the UIM carrier's obligation *and not a statutory precondition to coverage.*

*Id.* (emphasis added). Obviously, *Coots* was distinguishing between *coverage* and *liability.* "Coverage" is what authorizes an insured to make a claim or file a lawsuit under the policy, and *Coots*, citing *Puckett, supra*, held that a civil action could be brought against a UIM insurer without suing or recovering a judgment against the underinsured motorist, thereby overruling

---

**9.** Of course, the UM statute, which was being construed in *Puckett*, does not have the "judgment recovered against" requirement contained in the UIM statute, and it is likely that the "judgment recovered against" language was inserted into the UIM statute precisely to preclude application of the holding in *Puckett* to UIM claims.

**10.** *See Cardwell v. Haycraft*, Ky., 268 S.W.2d 916, 918 (1954) (use of the definite article "the" before the words "proximate cause" was erroneous because "such language indicates that 'the sole' rather than 'a contributing' cause was meant"); *see generally Kotila v. Commonwealth*, Ky., 114 S.W.3d 226, 237 (2003).

*Kempf. Coots, supra,* at 901. However, *Coots* also held that entitlement to the proceeds of the coverage requires proof of both (1) the *liability* of the underinsured motorist (only one element of which is fault), and (2) the amount of damages caused by the accident. *Id.* at 899. In holding that the statutory language, "judgment recovered against," equates with "could recover a judgment against," *Coots* was able to at least place a rational construction on the statutory language, "judgment recovered against." Unlike *Coots,* today's plurality opinion completely abrogates the legislative intent ("public policy") embodied in those words and thereby substitutes its own "public policy" for that established by the General Assembly.

Of course, the primary reason that *Coots* provided no basis for the decision in *Preston* is that *Coots* was construing language in the UIM statute that facially required a "judgment recovered against" the underinsured motorist as a precondition to entitlement to UIM proceeds while *Preston* was purporting to interpret the UM statute which does not contain that language. The problem faced by the majority in *Preston* was that *Coots* equated "judgment recovered against" with "legally entitled to recover," the operative language in the UM statute, *ergo,* the converse must also be true. This dilemma required the majority in *Preston* to rewrite *Coots* instead of simply attempting to distinguish it. Regardless, in departing from "the only rational interpretation of the statute," *Coots, supra,* at 899, both *Preston* and today's plurality opinion have skewed the language of both statutes (the "public policy") and thereby further distanced this Court from the mainstream of American jurisprudence.

The plurality's string citation of ten cases claimed to support the so-called "essential facts approach," *ante,* at 39, does not withstand scrutiny. Only three of those ten cases involved an immune tortfeasor and none involved a tortfeasor cloaked with sovereign immunity. While *Torres v. Kansas City Fire & Marine Insurance Co.,* 849 P.2d 407 (Okla.1993), indeed held that the insured could obtain payment under his UM coverage even though the tortfeasor was immune from liability because of the "exclusive remedy" provision of Oklahoma's workers' compensation statute, *id.* at 412 n. 6, virtually every other jurisdiction that has considered the issue has held that neither UM nor UIM coverage is payable if the tortfeasor enjoys workers' compensation immunity. *See, e.g., Chance v. Farm Bureau Mut. Ins. Co.,* 756 F.Supp. 1440, 1442–43 (D.Kan.1991) (interpreting Kansas law); *Allstate Ins. Co. v. Boynton,* 486 So.2d 552, 555 (Fla.1986) ("legally entitled to recover" means "that the insured must have a claim against the tortfeasor which could be reduced to judgment in a court of law"); *Williams v. Thomas,* 187 Ga.App. 527, 370 S.E.2d 773, 775 (1988) ("it is a condition precedent to an action against an automobile liability insurance carrier to recover under [the Georgia Uninsured Motorist Act] ... that suit shall have been brought *and judgment recovered* against the uninsured motorist") (emphasis in original, internal quotation omitted); *Mayfield v. Cas. Reciprocal Exch.,* 442 So.2d 894, 896 (La.Ct.App.1983) (UM recovery precluded if tortfeasor enjoys workers' compensation immunity); *Hopkins v. Auto–Owners Ins. Co.,* 41 Mich.App. 635, 200 N.W.2d 784, 786 (1972) (same); *Peterson v. Kludt,* 317 N.W.2d 43, 49 (Minn.1982) (same); *Wachtler v. State Farm Mut. Auto. Ins. Co.,* 835 So.2d 23, 28 (Miss.2003) (same); *Hubbel v. W. Fire Ins. Co.,* 218 Mont. 21, 706 P.2d 111, 114 (1985) ("uninsured motorist provisions should not be used to place an injured claimant in a better position than he would be under the ordinary provisions of

an existing insurance policy"); *Kough v. N.J. Auto. Full Ins. Underwriting Ass'n,* 237 N.J.Super. 460, 568 A.2d 127, 132 (App.Div.1990) (same); *Stuhlmiller v. Nodak Mut. Ins. Co.,* 475 N.W.2d 136, 138–39 (N.D.1991) (same principle applied to UIM coverage); *State Farm Mut. Auto. Ins. Co. v. Webb,* 54 Ohio St.3d 61, 562 N.E.2d 132, 135–36 (1990) (Insurer can assert tortfeasor's workers' compensation immunity); *Aetna Cas. & Sur. Co. v. Dodson,* 235 Va. 346, 367 S.E.2d 505, 508 (1988) (phrase "legally entitled to recover" interposes as a condition precedent to UM insurer's obligation the requirement that insured have a legally enforceable right to recover damages from uninsured motorist); *Romanick v. Aetna Cas. & Sur. Co.,* 59 Wash.App. 53, 795 P.2d 728, 730 (1990) (same as *Mayfield v. Cas. Reciprocal Exch.*).

The other two cases in the plurality's string cite that involved immune tortfeasors, *Allstate Insurance Co. v. Elkins,* 63 Ill.App.3d 62, 21 Ill.Dec. 66, 381 N.E.2d 1 (1978), and *Patrons Mutual Insurance Ass'n v. Norwood,* 231 Kan. 709, 647 P.2d 1335 (1982), both involved interspousal immunity (abrogated in Kentucky in *Brown v. Gosser,* Ky., 262 S.W.2d 480 (1953)). The Illinois intermediate appellate court held in *Elkins, supra,* that the tortfeasor's interspousal immunity did not bar the UM claim, *id.* at 3; the Kansas Supreme Court held in *Norwood, supra,* that it did. *Id.* at 1340.[11] Pointing out that "the purpose of the uninsured motorist statute is to afford the same protection to a person injured by an uninsured motorist as he or she would have enjoyed if the offending motorist had carried liability insurance," *id., Norwood* also held that "the insurer would have available to it, in addition to policy defenses compatible with the statute, the sub-

stantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc." *Id.* at 1338 (quoting *Winner v. Ratzlaff,* 211 Kan. 59, 505 P.2d 606, 610 (1973)); *see also State Farm Mut. Auto Ins. Co. v. Webb, supra,* at 135 ("It is a universal legal maxim that an insurance company must be able to assert the same defenses as the party for whose injurious action it is requested to provide compensation."); *Winner, supra,* so held despite using language similar to that in today's plurality opinion, *i.e.,* " 'legally entitled to recover as damages' [means] simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages." *Id.* at 610. Of course, *Winner,* unlike the case *sub judice,* did not involve an immune tortfeasor, so the only issue affecting liability in that case was fault.

Like *Winner,* no other case in the plurality's string cite involved an immune tortfeasor. In fact, *Sahloff v. Western Casualty & Surety Co.,* 45 Wis.2d 60, 171 N.W.2d 914 (1969), in which the only issue was the applicable period of limitations, held that "legally entitled to recover" means that the insured must have a "cause of action" against the tortfeasor. *Id.* at 918. Obviously, an insured does not have a cause of action against an immune tortfeasor.

Nor does *Philadelphia Indemnity Insurance Co. v. Morris,* Ky., 990 S.W.2d 621 (1999) (cited *ante,* at 40–41), provide any support for the plurality's conclusion in this case. In *Morris,* the tortfeasor was not immune from liability. The only issue was whether the claimant could recover both his employer's workers' compensation coverage and his employer's underinsured

---

**11.** Kansas has since abrogated interspousal immunity. *Flagg v. Loy,* 241 Kan. 216, 734 P.2d 1183, 1190 (1987).

motorist coverage. *Morris* held that he could. *Id.* at 627.

This is not, however, a case of first impression with respect to either facts or law. In *Coleman v. American Manufacturers Mutual Insurance Co.*, 930 F.Supp. 252 (N.D.Miss.1995) (applying Mississippi law), where the claimant, as here, was injured in a collision with a municipal fire truck, it was held that a UM carrier has available to it all of the defenses that would be available to the tortfeasor, including sovereign immunity. *Id.* at 254. And in *York v. State Farm Fire & Casualty Co.*, 64 Ohio St.2d 199, 414 N.E.2d 423 (1980), the Ohio Supreme Court held that the "legally entitled to recover" requirement precluded payment under the UM coverage to an insured who was injured in a collision with a municipal fire truck whose owner and driver both enjoyed statutory immunity. *Id.* at 425.

> The intent and thrust of [the UM statute] is not to provide coverage in all situations that might otherwise go uncompensated; rather, the uninsured motorist provision applies only when there is a lack of liability insurance. The insurance policy, and more importantly the statute, are not implemented when there is a lack of liability due to immunity.
>
> . . .
>
> It is obvious from a reading of the statute that the insured must be an entity capable of collecting from an uninsured. The city, in the instant cause, is cloaked with immunity, and, therefore, the appellees are not legally entitled to recover damages from the city. It is the legal defense, and not the status of insurance, that warrants our decision herein. The uninsured motorist coverage is to apply only in those situations in which the "lack of liability insurance" is the reason the claim goes uncompensated, and not

when the claim goes uncompensated because of the lack of liability due to the substantive laws of Ohio.

*Id.*

In *Vega v. Farmers Insurance Co.*, 323 Or. 291, 918 P.2d 95 (1996), the Oregon Supreme Court interpreted the phrase "legally entitled to recover" to require the UM/UIM claimant to demonstrate not only fault on the part of the tortfeasor and consequent damages but also that the claimant had a viable tort claim against the tortfeasor and could have obtained a favorable judgment against that party. *Id.* at 103–04. Following the holding in *Vega*, the Oregon Court of Appeals held in *Surface v. American Spirit Insurance Cos.*, 154 Or.App. 696, 962 P.2d 717 (1998), that where a tortfeasor was cloaked with sovereign immunity and the claimant had been paid the maximum limits under Oregon's Tort Claims Act, Ore.Rev.Stat. § 30.260, *et seq.*, the tortfeasor was not an underinsured motorist. *Id.* at 719–20. *See also Hanover Ins. Co. v. Gaudette*, 408 Mass. 591, 562 N.E.2d 815, 817 (1990) (UIM coverage not payable where tortfeasor was cloaked with sovereign immunity and claimant had been paid the limit of liability allowed by state's partial-waiver statute); *Cont'l W. Ins. Co. v. Conn*, 262 Neb. 147, 629 N.W.2d 494, 502 (2001) (same); *Francis v. Int'l Serv. Ins.*, 546 S.W.2d 57, 61 (Tex.1976) ("The purpose of the Act is to protect insureds against negligent, financially irresponsible motorists. It was not designed as a system for giving relief to people who cannot recover from a tortfeasor because of sovereign immunity."); *Sayan v. United Serv. Auto. Ass'n*, 43 Wash.App. 148, 716 P.2d 895, 900 (1986) ("legally entitled to recover" requirement precluded payment of UM coverage where tortfeasor enjoyed absolute immunity under federal law because both he and the claimant were engaged in the performance

of official military duties at the time of the accident).

As the plurality opinion correctly notes, *ante,* at 40, the present author of Professor Widiss's treatise, *Uninsured and Underinsured Motorist Coverage,* does not agree with these cases. However, equally respected legal scholars do not agree with Widiss.

> [If] a cause of action is not created as a result of the tortfeasor's negligent conduct, the insured is not considered to be "legally entitled" within the contemplation of the policy, but if a cause of action is created, the Insured is considered "legally entitled" although a personal defense or procedural restriction bars its enforcement.

2 Irvin Schermer, *Automobile Liability Insurance* § 24.02, at 24–2 (rev.2d ed.1985)

> Fundamentally, ... modern uninsured motorist coverage provides a motorist who carries a standard automobile liability policy and who suffers personal injuries by reason of the negligence of an uninsured motorist, rights against his own insurance company co-extensive with those he would have had against the uninsured tortfeasor.

Paul Pretzel, *Uninsured Motorists* § 1, at 5 (1972).

> Ordinarily, for the uninsured motorist clause to operate in the first place, the uninsured third person must be legally subject to liability. Thus, if the third person is specifically made immune to tort suit by the compensation act's exclusive remedy clause, the uninsured motorist provision does not come into play. In the familiar example of coemployee immunity, the issue thus becomes whether the accident was in the course of employment; if it was, the uninsured motorist carrier has no liability.

2A Arthur Larson, *Workmen's Compensation Law* § 71.23(j), at 14–37 (1983) (1987 Supp. at 14–44).

> If we go back to the statutory purpose examined earlier, it was to protect persons of the designated classes from economic loss resulting from injuries inflicted by financially irresponsible motorists. Unless we consider that the governments in question have indulged in fiscal policies so irresponsible as to be unable to satisfy claims made against them, they would not seem to be the type of entities contemplated by the law. While it may require a slightly different procedure to enforce such claims, since doctrines of governmental immunity have largely been abandoned, the victim is much better off than if confronted by a motorist carrying the bare minimum of coverage necessary to qualify under various financial responsibility laws.

8C John A. Appleman, *Insurance Law and Practice* § 5080.65, at 276 (1981).

The logic of these conclusions is inescapable. The purpose of the "legally entitled to recover" requirement embodied in both the UM and UIM (per *Coots* ) statutes is to place the policyholder in the same position as if he or she had been injured by a fully insured tortfeasor against whom a judgment could be obtained. In Kentucky, an injured claimant cannot recover a judgment against a tortfeasor cloaked with sovereign immunity absent an explicit waiver of that immunity by the General Assembly *even if the immune tortfeasor is fully insured. Withers v. Univ. of Ky.,* Ky., 939 S.W.2d 340, 346 (1997); *cf. Reyes v. Hardin County,* Ky., 55 S.W.3d 337, 342 (2001) (partial waiver found where General Assembly authorized both liability insurance for county hospitals and civil actions against counties to measure the extent of liability up to the limit of the policy). Absent a waiver, the

injured party has no cause of action whatsoever against an immune tortfeasor. Under a partial waiver, the cause of action exists only to the limit of the waiver. *Reyes, supra,* at 342. The law of Missouri is the same. Mo.Rev.Stat. § 537.610.1, 2. Either way, a totally immune tortfeasor is not an uninsured motorist but an immune motorist, and a partially immune tortfeasor is not an underinsured motorist (assuming he or she is insured to the full limit of the partial waiver) but an immune motorist to the extent the claim exceeds the limit of the partial waiver.

These cases do not leave an injured party without a remedy. Missouri's partial waiver of immunity is conceptually the same as our Board of Claims Act, KRS 44.070(5), which presently waives immunity up to a limit of $200,000 per person and $350,000 per accident. However, having been paid the limit of the partial waiver, Hatfield is not "legally entitled to recover" anything else from the immune tortfeasor. Thus, he is also precluded from recovering under the UIM coverage of Nationwide's policy.

### IV. GOVERNMENT–OWNED VEHICLE.

The Hatfields' policy also contains the following exclusion that precludes the result reached by the plurality in this case:

**DEFINITIONS**

. . .

3.  We will not consider as an . . . underinsured motor vehicle:

. . .

b) any motor vehicle *owned by a government unit or agency.*

(Emphasis added.)

This exclusion was explicitly upheld as reasonable in the context of UM coverage in *Commercial Union Insurance Co. v. Delaney,* 550 S.W.2d at 500, and was rec-ognized as the type of reasonable, narrowly drawn condition that fell within the authorization of the "terms and conditions" clause of the UM statute in *Chaffin v. Kentucky Farm Bureau,* 789 S.W.2d at 757. The exclusion is "reasonable" because there are other available avenues of recovery, *e.g.,* the Board of Claims Act, KRS 44.070, *et seq.,* and the Claims Against Local Governments Act, KRS 65.200, *et seq. See* 1 Paul A. Eisler, *California Uninsured Motorist Law* § 10.40, at 10–9 (1986) (government-owned vehicle exclusion does not violate the remedial purpose of the uninsured motorist law because government entities are normally able to respond in damages).

The *reason* for the exclusion is that an insurance company cannot exercise its subrogation rights against an immune tortfeasor. Even if a subrogation claim could be paid under a particular partial waiver statute such as the Board of Claims Act, where, as here, the insured has already exhausted the maximum limit of the partial waiver, there would be no additional funds available against which to assert a subrogation claim. Although subrogation rights often have limited value when exercised against an uninsured or underinsured motorist, that is not always the case. *See, e.g., Wine v. Globe American Casualty Co.,* Ky., 917 S.W.2d 558, 566 (1996), where the injured parties and their insurers litigated entitlement to approximately $700,000 recovered from an uninsured motorist. And that is definitely not the case with respect to a presumably solvent government tortfeasor.

The plurality opinion also includes a string cite of cases declaring the government-owned vehicle exclusion invalid under the respective statutory schemes of various jurisdictions. *Ante,* at 42–43. Virtually all of those cases, including the Missouri cases, involved UM coverage, not

UIM coverage, and every cited case, including the Missouri cases, was construing a statute that, like our UM statute, mandated that every *policy* of insurance contain the UM or UIM coverage. Ala.Code § 74(62a) (1965 version); Ariz.Rev.Stat. § 20–259.01(A) (1988 version); Ark.Code Ann. § 66–4003 (1947 version); Del.Code Ann., tit. 18, § 3902; Fla. Stat. § 627.727; Ga.Code Ann. § 56–407.1; Ill. Comp. Stat., ch. 73, § 755a (1967 version); Kan. Stat. Ann. § 40–284; La.Rev.Stat. § 22:1406; Me.Rev.Stat. Ann. § 2902(1); Minn.Stat. § 65B.49; Mo.Rev.Stat. § 379.203; Ohio Rev.Code Ann. § 3937.18(A); Okla. Stat. Ann. tit. 36, § 3636A; R.I. Gen. Laws § 27–7–2.1(a); Wash. Rev.Code § 48.22.030(2).

In apparent response to the rendition of the three Ohio cases cited by the plurality opinion, the Ohio legislature amended its UM/UIM statute to delete the mandatory language and make both UM and UIM coverage optional. 2001 Ohio Laws § 97. Nor is *Kyrkos v. State Farm Mutual Insurance Co.*, 121 Wash.2d 669, 852 P.2d 1078 (1993), the final word on this subject in the state of Washington. In *Bohme v. PEMCO Mutual Insurance Co.*, 127 Wash.2d 409, 899 P.2d 787 (1995), the Supreme Court of Washington upheld a government-owned vehicle exclusion in a UIM endorsement that was conditioned upon the government being financially solvent, *id.* at 791–92, noting that the purpose of underinsured motorist coverage is "to protect victims from financially irresponsible motorists by allowing them to recover the damages they would have received had the responsible party maintained liability insurance." *Id.* at 792. *See also Cont'l W. Ins. Co. v. Conn, supra*, at 502 (upholding statutory government-owned vehicle exclusion); *Francis v. Int'l Serv. Ins., supra*, at 61 (upholding government-owned vehicle exclusion in UM endorsement approved by Commissioner of Insurance).

Unlike the statutes relied upon in the cases cited by the plurality opinion, KRS 304.39–320 does not mandate that every policy of insurance contain UIM coverage. We have twice held that the government-owned vehicle exclusion is a reasonable, narrowly-drawn exclusion that does not offend the public policy exemplified by our mandatory UM statute. Manifestly, it is equally, if not more, reasonable when viewed in the context of our optional UIM statute.

## V. "REASONABLE EXPECTATIONS."

The plurality opinion misstates the so-called "doctrine of reasonable expectations" as mandating that one who pays a premium for coverage is entitled to be paid that coverage regardless of any terms, conditions or exclusions applicable thereto. *Ante*, at 43. In fact, "the proper area of inquiry is what the [insureds] could reasonably expect in light of what they actually paid for. . . ." *Estate of Swartz v. Metro. Prop. & Cas. Co.*, Ky.App., 949 S.W.2d 72, 76 (1997). Both the UM and UIM statutes (the "public policy") authorize "terms and conditions" of coverage, which includes "reasonable exclusions." *Preferred Risk v. Oliver*, 551 S.W.2d at 577. The plurality opinion's definition of "reasonable expectations" would eliminate all terms, conditions and exclusions from every coverage in every policy, thus, itself, violate the "public policy" established by the General Assembly.

In fact, the doctrine of "reasonable expectations" has nothing to do with the payment of a premium. It pertains to alleged ambiguities within the policy.

The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally

conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.

. . .

The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

*Simon v. Cont'l Ins. Co.*, Ky., 724 S.W.2d 210, 212–13 (1986) (quoting R.H. Long, *The Law of Liability Insurance* § 5.10(B)).

The Hatfields' policy excludes a government-owned vehicle from the definition of an underinsured vehicle. What could be more "unequivocally conspicuous, plain and clear" than that?

Accordingly, I dissent.

JOHNSTONE, J., joins this dissenting opinion.

KELLER, Justice, dissenting.

I respectfully dissent and would reverse the decision of the Court of Appeals and reinstate the trial court's summary judgment for Appellant. Appellee could not recover damages in excess of $100,000.00 from the City of Montgomery because of the City's immunity under Missouri law. Accordingly, Appellee had no "legal right to recover" additional damages from the City, and the trial court correctly determined that no underinsured motorist (UIM) benefits were payable to Appellee under the policy with Appellant. *See* KRS 304.39–320; *Coots v. Allstate Insurance Co.*, Ky., 853 S.W.2d 895 (1993).